CITIZENS' WHOLESALE SUPPLY CO. v. SNYDER et al.

(Circuit Court of Appeals, Third Circuit. February 1, 1913.)

No. 1,672, October Term, 1912.

MONOPOLIES (§ 12*)—COMBINATIONS—VIOLATION OF FEDERAL ANTI-TRUST LAW.

Citizens of a municipality, who in good faith combine to enforce an ordinance thereof, believing on reasonable grounds that it is valid, while in fact invalid as interfering with interstate commerce and so finally adjudged in the litigation instituted by them, are not guilty of violating Anti-Trust Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), and are not liable for damages sustained by the person prosecuted by them for violating the ordinance.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 10; Dec. Dig. § 12.*]

In Error to the District Court of the United States for the Middle District of Pennsylvania; Joseph Buffington, Judge.

Action by the Citizens' Wholesale Supply Company against Dennis H. Snyder and others. There was a judgment for defendants, and plaintiff brings error. Affirmed.

A. A. Vosburg, of Scranton, Pa., Philemon S. Karshner, of Adelphi, Ohio, and John C. Nissley, of Harrisburg, Pa., for plaintiff in error.

Harry S. Knight, of Sunbury, Pa., and M. H. Taggart, of Northumberland, Pa., for defendants in error.

Before GRAY and McPHERSON, Circuit Judges, and RELLSTAB, District Judge.

J. B. McPHERSON, Circuit Judge. In this action the Supply Company, an Ohio corporation, charges certain citizens of Sunbury, Pa., with violating the Anti-Trust Act of 1890 (Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200]). The statement of claim avers that the defendants, an unincorporated association of merchants and business men, combined to restrain the interstate trade of the Supply Company in groceries and other merchandise. The trial judge nonsuited the plaintiff, and adhered to that ruling upon the subsequent motion required by the state practice. The facts are as follows:

Since the early years of the state the subject of "peddling"—selling at retail from house to house or on the streets of a municipality— has been much considered in Pennsylvania, both by the Legislature and by the councils of cities and boroughs. And the courts have often been called upon to determine the scope and validity of numerous ordinances dealing with this persistently agitated matter. Among recent decisions of the appellate courts is the case of North Wales Borough v. Brownback, 10 Pa. Super. Ct. 227, in which an ordinance drawn in a particular form was held to be valid by the Superior Court; this ruling being afterwards affirmed by the Supreme Court. 194 Pa. 609, 45 Atl. 660, 49 L. R. A. 446. The decision of the Superior Court was announced in April, 1899, and in the following December the borough of Sunbury passed an ordinance essentially the same as the ordinance of North Wales. Section 1 provided:

"That after the passage of this ordinance it shall be unlawful for any person or persons to sell at retail by sample or otherwise, or to solicit orders at retail, or to solicit orders for, sell, or deliver at retail, either on the streets or by traveling from house to house within the limits of the borough of Sunbury, any books, paintings, foreign or domestic goods, wares, merchandise, or fruits, not of their own manufacture or production, without first obtaining from the chief burgess of the borough of Sunbury a license for such purpose."

In April, 102, the Supply Company (whose agents had been soliciting orders and delivering goods in the borough without a license) undertook by the hands of Rearick, one of these agents, to deliver certain brooms in fulfillment of previous orders. The secretary of the merchants' association believed that the original packages had been broken, and that the brooms were no longer protected by the com-

merce clause of the federal Constitution. Accordingly he directed the captain of the borough police to prosecute Rearick for violating the ordinance, and a fine was imposed by a justice of the peace. Upon appeal the quarter sessions of the county affirmed the conviction, and the Superior Court in a careful and elaborate opinion (Commonwealth v. Rearick, 26 Pa. Super. Ct. 384) affirmed the judgment of the quarter sessions. The Supreme Court of Pennsylvania refused permission to appeal (practically affirming the Superior Court), and the case was thereupon removed to the Supreme Court of the United States, where the judgment was reversed in December, 1906. Rearick v. Pennsylvania, 203 U. S. 507, 27 Sup. 159, 51 L. Ed. 295. The details of the controversy are not important. It is enough to say that the transport of the brooms for the purpose of filling the orders was held to be protected commerce. After several years of litigation it thus appeared that four tribunals of the state held one opinion, while the Supreme Court held a different, but, of course, the dominant, opinion, concerning the same transaction. The association had no doubt been wrong, but certainly no one can affirm that the question was not fairly debatable. Two years later the present suit was brought charging certain members of the association with combining to restrain interstate commerce. It is argued that the combination was sufficiently proved—or at all events that a jury might so find —by the facts that the secretary directed the arrest of Rearick under the ordinance and that the association defended the proceeding before every tribunal that considered it. No evidence was offered to show impairment of the Supply Company's trade in Sunbury, and the claim for damages was limited to three times the fees and other expenses of the litigation.

This situation does not call for extended comment. So far as appears, the defendants had nothing to do with the passage of the ordinance (even if this were important in the present case). The single allegation is that as they combined to enforce it against the Supply Company they combined necessarily to restrain commerce unlawfully between the states in question. It may perhaps be noted that the company's general right to make interstate shipments was not denied by the defendants. They merely attacked the particular shipment of brooms, because in their opinion these articles had lost the protection of the original package and had become part of the general mass of property in the borough, over which the ordinance could exercise control. Of course, an ordinance that conflicts with the commerce clause must ultimately give way; but we cannot assent to the proposition that two persons cannot combine in good faith to take action in the courts under such an ordinance without being exposed to the sanctions of the Anti-Trust Act. A citizen has a right to act in good faith upon the belief that a law or an ordinance passed by constituted authority is valid. Prima facie it *is* valid, and although his belief may no doubt be erroneous now and then, and he may have his labor and cost for his pains, we think it clear that even then he is not to be treated as a deliberate wrongdoer. We cannot suppose that the general words of the Anti-Trust Act were intended to include an agree-

ment in good faith to test a municipal ordinance in the courts. Such a construction would impose an extraordinary burden upon the citizen, and could only be justified by unmistakable language. It would require very plain speaking to make us believe that Congress had said, in effect, that citizens while acting in good faith to redress the violation of an ordinance prima facie valid, or even of fairly doubtful validity, must anticipate the decision of some ultimate tribunal, and must do so at the risk of being fined or imprisoned if their forecast should be wrong. The policy of the law encourages the peaceful settlement of disputes, and we see nothing in the conduct of the merchants' association that was deserving of blame. In good faith and on plausible grounds they believed the law to be with them, and they had a right to try out such a controversy in the courts, although the litigation might be expensive for their antagonist as well as for themselves.

No precedent has been cited that supports the plaintiff's position; but on the analogous subject of false imprisonment there are numerous cases to the contrary. Plaintiffs have often been denied the right to recover damages, although they have been actually imprisoned for violating an invalid law or ordinance. 19 Cyc. 345; Gifford v. Wiggins, 50 Minn. 401, 52 N. W. 904, 18 L. R. A. 356; Tillman v. Beard, 121 Mich. 475, 80 N. W. 248, 46 L. R. A. 215; and other cases referred to in these citations.

The judgment is affirmed.