BELDEN et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 26, 1915.)

No. 2517.

1. POST OFFICE ⬅48—"USING MAILS TO DEFRAUD"—SUFFICIENCY OF INDICTMENT.

To constitute the offense of using the mails in executing a scheme to defraud, under Criminal Code (Act March 4, 1909, c. 321) § 215, 35 Stat. 1130 (Comp. St. 1913, § 10385), but two elements are necessary and need be charged in the indictment: (1) The devising or intending to devise a scheme or artifice to defraud; and (2) the placing of a letter, etc., in the mails for the purpose of carrying into execution such scheme—the latter being the gist of the offense. It is not necessary to allege a conspiracy, although two or more may be jointly charged.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 67–80; Dec. Dig. ⬅48.

For other definitions, see Words and Phrases, First and Second Series, Defraud.]

2. CRIMINAL LAW ⬅622—USING MAILS TO DEFRAUD—JOINT INDICTMENT—SEPARATE TRIALS.

Where an indictment sufficiently charges the joint participation of two or more in using the mails in the execution of a scheme to defraud, it is not error to deny the defendants separate trials.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1380–1383, 1385, 1386, 1388–1390; Dec. Dig. ⬅622.]

3. POST OFFICE ⬅50—PROSECUTION FOR USING MAILS TO DEFRAUD—INSTRUCTIONS.

The question of the guilt or innocence of defendants, charged with using the mails in furtherance of a scheme to defraud, held properly submitted to the jury and by proper instructions.

[Ed. Note.—For other cases, see Post Office, Cent. Dig. §§ 87–89; Dec. Dig. ⬅50.

Nonmailable matter, see notes to Timmons v. United States, 30 C. C. A. 79; McCarthy v. United States, 110 C. C. A. 548.]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Criminal prosecution by the United States against Russell G. Belden and A. Eugene Wayland. Judgment of conviction, and defendants bring error. Affirmed.

The indictment charges Russell G. Belden and A. Eugene Wayland with having, prior to January 18, 1911, devised, and intending to devise, a scheme and artifice to defraud one John Neiderer, and divers other persons to the grand jury unknown, which said scheme and artifice to defraud was to be effected by the use and misuse of the United States post office establishment, with intent to incite and induce such persons so intended to be defrauded to open correspondence with them, by means of printed circulars, letters, and reports distributed through the mail, deposited and caused to be deposited in said United States mail for mailing and delivery to such divers persons intended to be defrauded, which said scheme and artifice to defraud so devised and intended to be devised by said defendants, and each of them, was substantially as follows:

That defendants would cause to be organized a corporation to be styled the International Development Company, to be controlled and managed by defendants, and each of them, the purpose of the corporation being to act as the fiscal agent for certain other corporations and firms thereafter to be incorporated and organized by said defendants as a part of the scheme to defraud; that defendants would, by themselves and through the Development Company, cause to be procured and obtained certain coal claims, having little or no value, situated in British Columbia, Dominion of Canada, and would cause to be organized a corporation to be styled the Michel Coal Mines, Limited, with a capital stock of 1,500,000 shares, of the par value of $1 each, said claims to be transferred to said Michel Coal Mines, Limited, in consideration that the said Michel Company would issue to defendants and the Development Company a large majority of its capital stock, fully paid up; that defendants would thereafter procure and cause to be procured other claims adjoining the aforesaid claims, and would thereafter cause to be organized another corporation to be styled the Crown Coal & Coke Company, with a capital stock of 2,000,000 shares, of the par value of $1 each, for the purpose of taking over said coal claims, and that in consideration therefor the Crown Coal & Coke Company would issue to defendants and the Development Company a large amount of the capital stock of said Crown Company, fully paid up; that defendants would cause to be procured other claims, and cause to be organized another corporation, to be styled the Empire Coal & Coke Company, with a capital stock of 1,500,000 shares, of the par value of $1 each, for the purpose of taking over said claims, in consideration that said Empire Company would transfer to defendants and the Development Company a large majority of the stock of said corporation, fully paid up; that defendants would cause to be procured a charter for the construction and operation of a railroad, ostensibly to furnish transportation facilities for the product of the alleged coal mines, and to be operated in connection therewith, and would cause to be organized a corporation to be styled the Crows' Nest & Northern Railway Company, with a capital stock of 20,000 shares, of the par value of $100 each, the said charter to be transferred to the said Railway Company in consideration of the transfer by said Railway Company to defendants and the Development Company of a large amount of its capital stock; that the balance of the capital stock of each of the aforesaid corporations, namely, the Michel Company, the Crown Company, the Empire Company, and the Railway Company should and would become the treasury stock of each of said corporations, respectively; that defendants would from time to time dispose of large amounts of the capital stock of the various corporations which had been transferred to them and the Development Company; that by means of stock ownership in the Development Company defendants would procure and maintain the management and control of the Development Company, and through said ownership, and by manipulation of the stock and books on account of

the various corporations, said defendants would obtain and maintain control of all such corporations with intent and purpose to defraud said divers persons.

It was further a part of the scheme that defendants, in their own names and in the name of the Development Company, by means of letters, notices, reports, circulars, and a prospectus sent and to be sent through the United States post office establishment, would induce persons to purchase shares of the capital stock of the aforesaid various corporations; and, in pursuance of such scheme, defendants did represent and state that the properties owned by said corporations, and the capital stock thereof, were and would become of great value, whereas in truth and in fact, as defendants well knew, the properties had no value, except that the claims of the Crown Coal & Coke Company contained valuable deposits of coal, which fact was fraudulently used by the defendants and the Development Company to aid them in the sale of the worthless stock of the aforesaid various corporations so held individually by defendants and the Development Company, and did falsely and fraudulently represent and pretend that the claims of the Michel Company and the Empire Company contained valuable deposits of a very high quality of coal, all of which was false, as defendants well knew, and did further falsely represent that the Railway Company had acquired a right of way for the construction of a railroad a distance of 15 miles, that they would construct and operate said road in connection with the mines, and that the proceeds to be derived from sales of stock would be used to build and equip said railroad and develop and equip said coal mines, whereas in truth and in fact, as defendants well knew, the Railway Company had not acquired a right of way, and the proceeds derived from the sale of said stock would not be, and the same were not, used to equip and develop the respective properties of said corporation, or to build said railroad, but that a large sum realized from such stock was diverted to the use of the defendants, all with the intent and purpose to defraud said divers persons.

And it was further a part of the scheme to represent to intending purchasers of stock in the Empire Company that with each $500 purchase there would be given a share of stock in the Railway Company, that of the proceeds received by the Empire Company $100 would be used by that company in the purchase of one share in the Railway Company, and that the $100 so expended would be placed in the treasury of the Railway Company to be used in the construction of said road, whereas in truth and in fact, as the defendants well knew, no part of said $100 would be placed in the treasury of said Railway Company, or used for the construction of said railroad, but would be and was appropriated by defendants to their own use and benefit. And it was a further part of the scheme that defendants would represent and pretend that the stock of the various corporations to be offered for sale would be treasury stock of the various corporations, and that the proceeds derived from the sale of such stock would be used for the equipment and development of the properties, whereas, in truth and in fact, as defendants well knew, the stock so sold was not treasury stock, but was, with but few exceptions, the individual stock of defendants and the Development Company, and all the real property and a large amount of the money derived from the sales of such stock were appropriated by defendants and the Development Company to their own use and benefit, it being the intent and purpose of the defendants thus to divert the vast amount of property and large amount of money so obtained to their own use and benefit and that of the Development Company, with intent and purpose to defraud the said John Neiderer and said divers other persons.

And the said defendants, on or about January 21, 1911, for the purpose of executing said scheme and artifice, and attempting so to do, knowingly, willfully, and feloniously placed and caused to be placed in the post office of the United States at Spokane, Wash., for mailing and delivery, a certain letter addressed to Mr. John Neiderer, Summerville, Ore. Then follows a copy of the letter, signed "International Development Co., per R. G. Belden."

The remaining two counts are practically the same, except that different letters are charged as having been mailed.

At the close of the trial the court instructed the jury to find a verdict of

not guilty as to the third count, but upon the first two counts both defendants were convicted, and from the judgment rendered the defendant Belden is prosecuting a writ of error to this court.

Fred C. Robertson and Fred Miller, both of Spokane, Wash., for plaintiff in error Belden.

Francis A. Garrecht, U. S. Atty., of Spokane, Wash., for the United States.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] The first and twenty-first assignments of error challenge the sufficiency of the indictment. The statute under which the indictment is drawn provides that:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, * * * shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card," etc., "in any post office * * * of the United States, * * * to be sent or delivered by the post office establishment of the United States, * * * shall be fined," etc.

The simple elements of the offense consist in having devised or intending to devise a scheme to defraud, and in executing or carrying into effect such scheme or artifice by placing or attempting to place a letter, postal card, etc., in the post office to be sent or delivered through the post office establishment of the United States. It is said that the misuse of the mails is the gist of the offense, or, as expressed by another court, is the "material thing" or "substance of the offense," while, of course, it must be in execution or attempted execution of a scheme or artifice to defraud. Both elements must be present, while it is the misuse of the mails for the execution of such a scheme that is denounced. Marrin v. United States, 167 Fed. 951, 955, 93 C. C. A. 351; Gould v. United States, 209 Fed. 730, 733, 734, 126 C. C. A. 454.

Under the old section 5480, R. S., it was requisite that three matters of fact be charged in the indictment, namely: (1) That the person charged had devised a scheme or artifice to defraud; (2) that he intended to effect the scheme by opening or intending to open correspondence through the post office establishment, or by inciting other persons to open communication with him; and (3) that in carrying out such scheme such person had either deposited a letter or packet in the post office, or taken or received one therefrom. Stokes v. United States, 157 U. S. 187, 15 Sup. Ct. 617, 39 L. Ed. 667.

But the present statute, section 215 of the Code, seems to have eliminated the element that the persons devising the scheme must have intended to effectuate the same by opening or intending to open correspondence through the post office establishment, and all that is now essential is that, for the purpose of carrying into execution the scheme or artifice, a letter or other writing be sent through or taken from the post office establishment. Hence the offense as now defined consists of but two elements, whereas previously it consisted of three, as analyzed in the Stokes Case.

Now it needs but an inspection of the indictment to determine its sufficiency. What is stated as to the scheme or artifice devised or intended to be devised is quite ample to show, not only that it amounted to a scheme or artifice, but that it was designed, intended, and calculated by its very nature to defraud, and indeed it is set out with abundant particularity, so that the indictment must be held to be sufficient.

One or two or more persons may devise a scheme or artifice to defraud, and the statute does not contemplate that, if two or more persons so devise such a scheme or artifice, they shall be proceeded against as for a conspiracy to commit the offense denounced. While the government may prosecute for such a conspiracy if it sees fit (Stokes v. United States, supra; Wilson v. United States, 190 Fed. 427, 111 C. C. A. 231), yet it need not do so, and may prosecute for the simple offense denounced. In a prosecution for the simple offense, no overt act, as the term is understood in connection with the offense of conspiracy, is essential to be set up, but it must be made to appear that a letter or card, etc., has been mailed for the purpose of carrying into execution the scheme or artifice devised. In the one case the conspiracy is the gist of the offense, while in the other the misuse of the mails is the material thing denounced.

Nor is it essential, in offering proof respecting the existence of a conspiracy with relation to a scheme to defraud, and the use of the mails in furtherance thereof, that such conspiracy be alleged in the indictment. It is a common thing to have the question arise whether one defendant is bound by the statements and acts of another, or of persons not even connected by indictment with the offense charged, and the constant ruling has been that, if there has been a joint contrivance, or joint participation, with a common purpose, the acts and statements of the one, while engaged in carrying into effect the common purpose, are evidence against the other, and this without the necessity of alleging conspiracy in the commission of the offense. Fitzpatrick v. United States, 178 U. S. 304, 20 Sup. Ct. 944, 44 L. Ed. 1078, is illustrative. That was a case where three persons were jointly indicted for murder, and there was no accompanying charge that the defendants conspired to commit the act.

[2] By assignment 2 the question is presented whether the trial court should have granted separate trials. An inspection of the indictment shows the joint participation of the defendants in the offense charged, and this is sufficient reason for denying the motion.

Assignment of error No. 3, as we are informed by counsel's brief, relates to the action of the court in admitting in evidence plaintiff's Exhibit 7. On reference to the record, we find that the assignment is there numbered 4. The whole of the assignment reads:

"The court erred in admitting in evidence the agreement between J. H. Hemphill, Russell G. Belden, and S. W. O'Brien forming Inland Surety Company."

This is all that is given for the court's enlightenment as to how the question arose, or as to what were the accompanying facts and testimony, so as to show its relevancy or pertinency, or we may say its irrelevancy and incompetency as a piece of testimony to prove the guilt

of the defendants. It cannot be expected that by such a showing the court is going to grope through the record (and all of the testimony is here, with objections and exceptions as made and entered during the progress of the trial), to determine whether the defendants have a case for a valid exception or not. The purpose of the bill of exceptions is to show in tangible and feasible form the exceptions relied upon. For this reason the purported exception will not be further considered.

The fourth is even a worse assignment than the third, for on reference to the record we look in vain for any assignment of error at all relating to the admission of Exhibits 8 and 9.

So of assignments 6, 7, and 8. We refer to the assignments as numbered and stated in counsel's argument in their brief, for it is difficult to trace out the corresponding assignments in the record. They are of such a nature that the court will not examine into them for reasons above stated.

[3] Assignment 9 relates to a motion at the close of the testimony for an instructed verdict. It would be a work of supererogation to review the testimony for the purpose of determining whether there was sufficient evidence adduced to carry the case to the jury. It is sufficient that even a cursory review of the testimony will satisfy any candid mind that there was ample testimony to support every material allegation of the two counts of the indictment submitted to the jury.

There was a controversy during the trial as to the effect and value of certain representations made by defendants, whether they were assertions of opinion merely, or the statement of matters designed to be believed as existing facts; but as to this the jury was fully and clearly instructed, and no error was committed in allowing the case to go to the jury upon the testimony.

Assignment 10 relates to the court's instruction defining the terms "fraudulent pretenses, representations, or promises." We refer again to the assignment as numbered in counsel's argument in their brief, for if attempt be made to trace out any such assignment in the record it will be found to be very confusing. It seems to be thought that false pretenses have no part nor parcel in the offense with which the defendants were charged. But the court was defining the terms of the statute, and the scheme or artifice to defraud was a bundle—and a large one at that—of false representations, if anything. If the representations could not be so characterized, then there was no scheme to defraud, for it depended for its fraudulent character on the falsity of the representations. The jury was properly instructed in this particular.

Assignments 11 and 12: Counsel's argument in their brief is answered by what has been heretofore said respecting the indictment. It was not essential that it contain allegations of conspiracy, but it was altogether proper to charge the jury respecting the subject, if the evidence offered tended to show that a conspiracy really existed in relation to operations to defraud.

Assignment 13 is answered by what has been said respecting the motion for a directed verdict.

As to assignments 14, 15, 16, 17, 18, and 19, we have examined them closely and critically, and find no merit in any of them.

Judgment affirmed.