## UNITED STATES v. FOOD AND GROCERY BUREAU OF SOUTHERN CALIFORNIA, Inc., et al.

### No. 14952–Y.

District Court, S. D. California, Central Division.

March 11, 1942.

Tom C. Clark, Alfred C. Ackerson, George R. Maury, Robert J. Rubin, Sheridan Morgan, Paul Meyers, Homer H. Bell, and Perry H. Taft, Sp. Assts. to Atty. Gen., all of Los Angeles, Cal., for plaintiff.

Cupp, Hunt & Henderson, by J. Wesley Cupp, all of Los Angeles, Cal., for Food and Grocery Bureau of Southern California, Inc., Southern California Retail Grocers Ass'n, S. M. White, Roy J. Porter, Market Basket and Ben Roth, Clarence A. Plumridge, and Carl M. Grayson.

Cupp, Hunt & Henderson, by J. Wesley Cupp, Otto Christensen, and Eugene Sax, all of Los Angeles, Cal., for United Jewish Retail Grocers of California and Myer Pransky.

Mitchell, Johnson & Ludwick, Byron C. Hanna, and James Kirby, all of Los Angeles, Cal., for Certified Grocers of California, Ltd., Caler Grocery Co., Ltd, Clayton Whiteman, Sam Seelig, Morris Weisstein, Henry J. Carty, T. I. Lingo, Isador Saul, Miller Allen, and T. A. Von der Ahe.

Fred Horowitz, of Los Angeles, Cal., for Colonial Wholesale Grocery Co., Ltd., and State Wholesale Grocery Co., Inc.

D. G. Montgomery and Otto Christensen, both of Los Angeles, Cal., for Spartan Grocers, Ltd., E. G. de Staute, Harold R. Zenor, and George Hagmann, Jr.

YANKWICH, District Judge (after stating the facts as above).

At various stages during the trial, many of the phases of the Anti-Trust Statutes, in their bearing on the indictment under consideration, have been discussed. The decision I am about to announce on the motions pending before me, calls for a statement of certain principles of law which either have not been fully treated by me during the trial or have been merely adverted to.

More particularly, the determination of the motion of the Government to apply all the evidence to all the defendants on trial and of the related motions of the various defendants to strike certain evidence from the record, calls for a statement of the principles of law which govern the admissibility in evidence of acts or declarations of one conspirator against the others.

It is the general rule that, while the conspiracy is in action, anything which one of the conspirators does or says in furtherance of it is admissible against the others. This excludes acts or declarations not in furtherance of the conspiracy, or done or made, after it has come to an end. See Logan v. United States, 1892, 144 U.S. 263, 309, 12 S.Ct. 617, 36 L.Ed. 429; John Brown v. United States, 1893, 150 U.S. 93, 98, 14 S.Ct. 37, 37 L.Ed. 1010; Mayola v. United States, 9 Cir., 1934, 71 F.2d 65; Gambino v. United States, 3 Cir., 1939, 108 F.2d 140, 142; United States v. Groves, 2 Cir., 1941, 122 F.2d 87, 91. This principle, strictly speaking, does not relate to conspiracy only. It applies to all cases in which several persons are charged jointly with the doing of a criminal act. So we find this statement by our Ninth Circuit Court of Appeals in Cossack v. United States, 9 Cir., 1936, 82 F.2d 214, 216:

"When it is established that persons are associated together to accomplish a crime or series of crimes, then the admissions and declarations of one of such confederates concerning the common enterprise while the same is in progress are binding on the others. It is not the name by which such a combination is known that matters, but whether such persons are working together to accomplish a common result. '* * * The legal principle governing in cases where several are connected in an unlawful enterprise is that every act or declaration of one of those concerned in the furtherance of the original enterprise and with reference to the common object is, in contemplation of law, the act or declaration of all.' * * *

"The common object of persons associated for illegal purposes forms part of the res gestæ, and acts done with reference to such object are admissible, though no conspiracy is charged. Vilson v. United States, supra [9 Cir., 61 F.2d 901]; Sprinkle v. United States [4 Cir.], 141 F. 811".

This statement was approved by the same court in a later case, Coplin v. United States, 9 Cir., 1937, 88 F.2d 652, 661. The Court there stated: "This is not new doctrine, in this circuit or elsewhere."

For proof, the Court referred to its own opinions in Belden v. United States, 9 Cir., 1915, 223 F. 726, and in Samich v. United States, 9 Cir., 1927, 22 F.2d 672. In the former case [223 F. 730], the Court used this language: "It is a common thing to have the question arise whether one de-

fendant is bound by the statements and acts of another, or of persons not even connected by indictment with the offense charged, and the constant ruling has been that, if there has been a joint contrivance, or joint participation, with a common purpose, the acts and statements of the one, while engaged in carrying into effect the common purpose, are evidence against the other, and this without the necessity of alleging conspiracy in the commission of the offense." Belden v. United States, 9 Cir., 1915, 223 F. 726, 730.

In the application of the principle to co-conspirators, the line is tightly drawn. Only those acts and statements of a conspirator which are in furtherance of the conspiracy are admissible. An interesting illustration is found in the decision of the Ninth Circuit Court of Appeals in Mayola v. United States, 9 Cir., 1934, 71 F.2d 65, 67. That case involved a conspiracy to counterfeit money of the United States. At the trial, the Court allowed testimony of the declarations of one of the co-conspirators who committed suicide on arrest, implicating the appellant. Although the narration related to things occurring prior to the expiration of the conspiracy, the Court held that they were merely narrations by a co-conspirator of things alleged to have been done by him and the appellant, and, not having been made in furtherance of the conspiracy, were not admissible. Judge Garrecht wrote:

"In Logan v. United States, 144 U.S. 263, 308, 12 S.Ct. 617, 632, 36 L.Ed. 429, Mr. Justice Gray, speaking for the court, said: 'The court went too far in admitting testimony on the general question of conspiracy. Doubtless, in all cases of conspiracy, the act of one conspirator in the prosecution of the enterprise is considered the act of all, and is evidence against all. United States v. Gooding, 12 Wheat. 460, 469, 6 L.Ed. 693. But only those acts and declarations are admissible under this rule which are done and made while the conspiracy is pending, and in furtherance of its object.' Brown v. United States, 150 U.S. 93, 98, 14 S.Ct. 37, 37 L.Ed. 1010. To the same effect is United States v. Goldberg et al., 25 Fed.Cas. pages 1342, 1345, No. 15,223, 'The act must be one, you will observe, to effect the object of the conspiracy. * * *'

"Isenhouer et al. v. United States [8 Cir.], 256 F. 842, says that the rule above stated is an old one. Morrow et al. v. United States [8 Cir.], 11 F.2d 256, 259, reiterates the rule and cites especially Brown v. United States, supra, in addition to numerous other cases. In this circuit in Sugarman v. United States [9 Cir.], 35 F.2d 663, 665, it is said that: '* * * the true rule is that acts and declarations of one conspirator, *in furtherance of the object of the conspiracy and during its existence,* are binding on all members of the conspiracy, whether present or absent. * * *' See, also, United States v. Renda et al. [2 Cir.], 56 F.2d 601; Van Riper v. United States [2 Cir.], 13 F.2d 961, 967. This latter case holds that: '* * * For this reason, merely narrative declarations are not competent. * * *' Obviously, the statements and declarations made by Mr. Walkup to his wife were of this classification, merely narrative." (Italics added)

At one stage during this trial, when I adverted to this principle, one of counsel for the Government stated that he thought greater liberality obtained in proving a conspiracy of this character than the usual conspiracy which involves a conspiracy to violate another law or to do another illegal act. It may well be that greater latitude should obtain as a matter of policy. But I know of no reason which would make admissible in the case of one who is alleged to have conspired to restrain trade in violation of the Sherman Anti-Trust Act, § 1, 15 U.S.C.A. § 1, which makes the conspiracy the gist of the offense, what is not admissible against one who is charged to have conspired to do any of the illegal acts which are denounced by the general conspiracy statute of the United States, 18 U.S.C.A. § 88. And I have found no cases which make such distinction.

After all, the question must be determined by the rules of evidence in criminal cases.

As the principle which allows the acts or declarations of one acting in concert or conspiring with another to be admitted against his fellow in crime is in derogation of the hearsay rule, no sound reason exists for extending it beyond its scope or for refusing to apply its limitations to a conspiracy of this character. After all, a conspiracy is a conspiracy. Both are made crimes by the same legislative authority. The fact that one is a felony and the other a misdemeanor is

unimportant. They both punish acts when done by several persons which are not criminal if done by a single person. They both rely upon the agreement between two or more persons to do a certain act as the basis for criminality. They call, therefore, for the same rules of evidence.

■ Another principle of law to which I adverted during the early stages of the case was the criminal responsibility of a principal for the acts of his agent. I quote from my opinion in People v. Armentrout, 1931, 118 Cal.App.Supp. 761, 1 P.2d 556, 561: "'A principal, in order to be held criminally liable, must be shown to have knowingly and intentionally aided, advised, or encouraged the criminal act committed by the agent.' People v. Doble, 203 Cal. 510, 511, 265 P. 184. 'Before one can be convicted of a crime by reason of the acts of his agent a clear case must be shown. The civil doctrine that a principal is bound by the acts of his agent within the scope of the agent's authority has no application to criminal law.' People v. Green, 22 Cal.App. 45, 50, 133 P. 334. * * * Only when the principal aids, abets, commands, or assents to the criminal act can he be held responsible for a crime of which intent is an essential ingredient which is not supplied by law or implied from the doing of the act. * * * Strictly speaking, there can be no ratification of a criminal act in which a specific intent is necessary. 'He (the principal) must be liable, if at all, at the time the act is done.' Clark & Marshall on Crimes (3d Ed.) § 194, p. 255. 'He only is criminally punishable, who *immediately* does the act, or *permits it* to be done.' Rex v. Huggins, supra, at p. 1580 of 2 Ld. Raymond."

In Nobile v. United States, 3 Cir., 1922, 284 F. 253, 255, the Court said: "Criminal liability of a principal or master for the act of his agent or servant does not extend so far as his civil liability. *He cannot be held criminally for the acts of his agent, contrary to his orders, and without authority, express or implied, merely because it is in the course of his business and within the scope of the agent's employment, though he might be liable civilly.*" (Italics added)

And thus Paschen v. United States, 7 Cir., 1924, 70 F.2d 491, 503: "* * *

civilly one is responsible for the acts and doings of his accredited agent acting within the scope of his authority, while one may be criminally liable only in case he intentionally does that which the law denounces and penalizes. Nobile v. United States, [3 Cir.], 284 F. 253."

These cases but state the general rule, which is recognized everywhere, although very few federal cases seem to have dealt with it.[1]

■ The relevancy of these two fundamental rules to the motions before me is apparent. In determining what evidence to apply to a particular defendant, we must exclude any acts or declarations of a co-defendant in which the particular defendant has not participated, unless they occurred during the lifetime of the conspiracy, and were done in furtherance of it. Nor can we bind a defendant who is shown to have been the agent of another defendant, either individual or group, unless the evidence shows that what he did was done with the principal's authority and under his direction. Of course, we are not concerned with cases, such as those involving illegal sales of liquor and the like, where from the mere fact that the agent is about the business of the principal, consent is implied. See United States v. Wilson, D.C.Wash.1932, 59 F.2d 97.

We are dealing with offenses which require a specific intent or intention to their completion. In these cases, unless there be command, direction or consent by the principal, he commits no offense. It was conceded at the argument by counsel for the Government that under this indictment, the Government must show a specific intention on the part of the defendants to restrain interstate commerce, or acts which, in their result, achieve such a restraint. See Coronado Co. v. United Mine Workers, 1925, 268 U.S. 295, 310, 45 S.Ct. 551, 69 L.Ed. 963; Schechter Corporation v. United States, 1935, 295 U.S. 495, 547, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947.

In the proof of either, the restraint must be brought home to each defendant, either by acts of his own or by acts of others which he assented to, in furtherance of the common object.

---

[1] See 22 Corpus Juris Secundum, Criminal Law, § 84, pp. 149, 150, where the principle declared in People v. Armentrout, supra, and the cases just cited is accepted as the law of today.

To bring these propositions to bear upon the problem confronting us:

 Exhibit No. 401, dated June 24, 1935, relied on by the Government as one of the starting points of the conspiracy, deals with a perfectly legal venture—the association of various persons to assist in the enforcement of an act of the State of California. An association for such purpose is not illegal. See Citizens' Wholesale Supply Co. v. Snyder, 3 Cir., 1913, 201 F. 907. It is not contended that this is violative of the Anti-Trust Law. Certain it is that a State may, within its boundary, regulate trade practices, so as to prevent unhealthy competition. While the indictment charged that the amendatory provisions of the Act were passed in 1935, Act 8781, Deering's General Laws of California, Calif.Stats.1935, p. 1546, at the instigation of the defendants (Indictment, Sec. 22, page 11), no legislative history has been given in this court, which would indicate that the passage of the Act was a part of a combination or of a conspiracy on the part of the defendants to violate the anti-trust law. As we watch the history of the Act, dating back to 1913, its successive amendments in 1931, 1933, 1935, and its later amendments in 1937, and 1939, we can only discern in it the expression of the gropings of certain business and economic interests in an effort to cope with the problems which the Depression of 1929 and the impact of foreign revolutionary activities affecting world economy even before the Second World War began, had forced upon the world. And legislative attempts to fit outmoded economic methods to new patterns arising. But be that as it may, we can find no illegality in the activities of persons who seek to prohibit, within the boundary of a state, sales at less than cost, the use of "loss leaders" and the other unfair practices which the state statute condemned.

 Exhibit 402, dated October 15, 1935, may be said to be a departure from the original object. We find mention in it of a "gentlemen's agreement", the object of which is to stabilize prices by methods other than those sanctioned by the state statute. It is beyond cavil that the latest decisions of the Supreme Court make all price-fixing, per se, illegal. As said in Ethyl Gasoline Corp. v. United States, 1940, 309 U.S. 436, at page 458, 60 S.Ct. 618, at page 626, 84 L.Ed. 852: "Agreements for price maintenance of articles moving in interstate commerce are, without more, unreasonable restraints within the meaning of the Sherman Act because they eliminate competition, United States v. Trenton Potteries Co., 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989, and agreements which create potential power for such price maintenance exhibited by its actual exertion for that purpose are in themselves unlawful restraints within the meaning of the Sherman Act, which is not only a prohibition against the infliction of a particular type of public injury but 'a limitation of rights * * * which may be pushed to evil consequences, and therefore restrained'." "Fixed prices" mean agreed prices. And it matters not whether they are set at a maximum or at a minimum or that a formula is merely adopted for arriving at the actual price. A price is nonetheless fixed because it is not uniform. United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 222, 223, 60 S.Ct. 811, 84 L.Ed. 1129. Economic benefits do not excuse price fixing in interstate commerce. And if the effect of a policy be such, it matters not that the restraint occurs at the end of the interstate journey. As said in Local 167 v. United States, 1934, 291 U.S. 293, 297, 54 S.Ct. 396, 398, 78 L.Ed. 804: *"The control of the handling, the sales and the prices at the place of origin before the interstate journey begins or in the state of destination where the interstate movement ends may operate directly to restrain and monopolize interstate commerce."* (Italics added) It is true that the Court there was dealing with a restraint broader than mere price fixing. But prices fixed in advance to affect a product at the end of its interstate journey are an interference with that commerce, although, at the time the sale is actually made, the product originating in interstate commerce may actually have come to rest on the shelf of a retailer. It is the agreement on the price, *in advance,* which constitutes the violation, not the sale at the price.

In the recent case of United States v. Wrightwood Dairy Co., 62 S.Ct. 523, 526, 86 L.Ed. ——, decided on February 2, 1942, the Supreme Court said: "Competitive practices which are wholly intrastate may be reached by the Sherman Act * * * because of their injurious effect on interstate commerce."

The butter and egg cards and other circulars of similar character, quoting prices

on sugar and other commodities such as milk, cereals, baking powder, oleomargine, from day to day, are distinctly price-fixing documents—as one of counsel for the defendants frankly admitted.

But unless the passage from the legal to this illegal object is brought home individually to the various defendants, mere membership in the Bureau, mere contributions toward its support, or the collection of the tax on milk by wholesalers from retailers for the use of the Bureau, are not sufficient to charge the individual members—be they persons or groups—with these acts.

Nor, assuming that the Secretary of the Bureau, the Bureau as a corporate entity, and the directors, who participated in its deliberations, knew of the activites, can this illegal object be charged to the organizations of which some of the directors were also members, unless it appear that the organization, *as such,* knew and sanctioned the acts of their representatives. Any other attitude would result in grave injustice. Some of the defendant organizations are cooperatives—groups consisting of hundreds of petty tradesmen. It would be wholly unfair to charge this group with the actions of some of their officers in attempting to bind them to an illegal act, unless it be shown that the matter was brought up and explained at some meeting and that the nature of the activity was clearly understood by the membership. Our law abhors crime by association. To say that a hundred grocers, bound together in a cooperative, should be found guilty of the violation of a statute of the United States because one or two of their officers or directors were also on the Board of the Bureau, would be applying to criminal law the civil law of agency. This cannot and should not be done.

Upon this groundwork of principles, we can determine the motions before us without much detailed discussion.

### I. The Motion of the Government to Apply All the Evidence Introduced as to All the Defendants.

This motion will be granted as to the defendants: Food and Grocery Bureau of Southern California, S. M. White, Clarence A. Plumridge, Roy J. Porter, Carl M. Grayson, Clayton Whiteman, Sam Seelig, Henry J. Carty, T. I. Lingo, Miller Allen, Myer Pransky, Harry R. Zenor, George Hagmann, Jr.

The motion will be denied as to the defendants: Southern California Retail Grocers Association, a corporation, United Jewish Retail Grocers of California, Certified Grocers of California, Ltd., a corporation, Caler Grocery Co., Ltd., T. A. Von der Ahe, Colonial Wholesale Grocery Co., Ltd., State Wholesale Grocery Co., Inc., a corporation, Market Basket, Spartan Grocers, Ltd., E. G. de Staute, Ben Roth.

I am of the view that the evidence does not show that any of these individual or group defendants, as to whom the motion is denied, engaged in any scheme of price-fixing or joined others in carrying out an intention to fix retail prices in obstruction of interstate commerce.

To amplify this further would require a repetition or application to each of these defendants of the legal norms discussed. This is unnecessary. I believe that the application of the principles to each of them is obvious. Either their part was insignificant, or there is no evidence of any knowledge on their part that anyone was doing aught but engage in a legal activity. There is no evidence that they participated in any act of an illegal nature, such as coercion, threats, intimidation, and the like, in carrying out the objects for which they may have associated themselves with the Food and Grocery Bureau, at its inception. You cannot ground a conspiracy upon the doing of a lawful act, unless the means are unlawful. The effort to support the Unfair Practices Act was not accomplished by any unlawful means, so far as these particular defendants are concerned.

### II. The Motions to Strike.

In view of the conclusion reached on the Government's motion and the conclusion to follow on the motions to dismiss, I need not rule specifically on each of the items of the motions to strike.

The motions to strike will be denied as to all the defendants. However, Exhibits Nos. 117, 166, 172 and 178 will be stricken as to all the defendants, except the defendant Grayson. This upon the ground that they are narrative letters detailing the workings of the Bureau, and not admissions or declarations in furtherance of a conspiracy. For this reason, and on the authority of Mayola v. United States, 9 Cir., 1934, 71 F.2d 65, already discussed, they are not admissible.

974

### III. The Motions to Dismiss.

The motion to dismiss will be granted as to the defendants: Southern California Retail Grocers Association, a corporation, United Jewish Retail Grocers of California, Certified Grocers of California, Ltd., a corporation, Caler Grocery Co., Ltd., T. A. Von der Ahe, Colonial Wholesale Grocery Co., Ltd., State Wholesale Grocery Co., Inc., a corporation, Market Basket, Spartan Grocers, Ltd., E. G. de Staute, Ben Roth.

I am of the view that, in the light of the discussion which precedes, the evidence as to these defendants is insufficient to call upon them for a defense.

The motion to dismiss will be denied as to the defendants: Food and Grocery Bureau of Southern California, S. M. White, Clarence A. Plumridge, Roy J. Porter, Carl M. Grayson, Clayton Whiteman, Sam Seelig, Henry J. Carty, T. I. Lingo, Miller Allen, Myer Pransky, Harry R. Zenor, and George Hagmann, Jr.

I am of the view that, so far as these defendants are concerned, the evidence in the record does show their participation in a scheme to stabilize prices which affected interstate commerce.

This, of course, does not foreclose the possibility that any of these defendants may be in a position to contradict the prima facie case which the evidence establishes and to prove that they, like the group as to which the case is dismissed, were not parties to any agreement to fix either wholesale prices under Count I of the indictment or retail prices under Count II of the indictment.

Exceptions to defendants as to motions denied.