**UNITED STATES of America**

v.

**SAFEWAY STORES, Incorporated, Lingan A. Warren and Earl Cliff, Defendants.**

**Crim. A. No. 9584.**

United States District Court
N. D. Texas,
Fort Worth Division.

June 3, 1957.

Victor R. Hansen, Asst. Atty. Gen., Victor H. Kramer, Margaret H. Brass, Attys., Dept. of Justice, Washington, D. C., Paul A. Owens, Atty., Dept. of Justice, Detroit, Mich., for the United States.

Robert L. Clark, Pat Coon, Ramsey Clark, Dallas, Tex., George C. Kemble, Fort Worth, Tex., Henry N. Ess, Elton L. Marshall, Carl E. Enggas, Colvin A. Peterson, Jr., Kansas City, Mo. (Clark, Coon, Holt & Reed, Dallas, Tex., Watson, Ess, Marshall & Enggas, Kansas City, Mo., of counsel), for defendants.

ESTES, District Judge.

The matter for determination is defendants' motion for leave to withdraw their pleas of not guilty, and to enter pleas of nolo contendere. Rule 11 of the Federal Rules of Criminal Procedure, Title 18, U.S.C., has provided that a defendant may plead not guilty, guilty, or with the consent of the Court, *nolo contendere*. As the offered plea of *nolo contendere* is only available to the defendants with the consent of the Court it is appropriate that the Court give due consideration to the views of the Government, who urges that the offered plea should not be accepted, as well as those of the defendants who say, in effect, that they do not wish to contest the charges made against them, but desire to submit to the judgment of the Court.

That the acceptance or rejection of this motion lies within the discretion of the Court is undisputed. Proper exercise of this discretion requires careful consideration of the facts and circumstances of this case in the light of the general nature and implications of the plea of *nolo contendere*.

On November 1, 1955 the United States filed two suits, Criminal Action No. 9584 against Safeway Stores, Incorporated, Lingan A. Warren, then the president of the corporation, and Earl Cliff, manager of Safeway's Dallas Division (hereinafter referred to as Safeway), and Civil Action No. 3173 against Safeway Stores, Incorporated. Both suits charged violations of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note by conspiring and attempting to monopolize interstate commerce in the sale of food and food products at retail in various cities in Texas and New Mexico, and by selling groceries in Safeway's retail stores in a part of the United States at prices lower than those exacted for such groceries by Safeway elsewhere in the United States for the purpose of destroying competition or eliminating competitors in such part of the United States.

Civil Action No. 3173 seeks an adjudication that Safeway has attempted to monopolize interstate commerce in violation of Section 2 of the Sherman Act,

and an injunction enjoining and restraining Safeway, its officers, directors and personnel:

from setting arbitrary quotas or percentages of total available business in retailing groceries to be attained by Safeway, or requiring Safeway personnel to meet such quotas, or

from selling below invoice cost to destroy competition, or

from selling identical items at different prices within the same Safeway district of its retail operations, or

from operating any of its districts below the cost of doing business, for the purpose of destroying competition.

The Criminal Information, No. 9584, was substantially the same as an indictment returned against the defendants on July 7, 1955 by the Grand Jury. Upon motion of the Government that indictment was dismissed and this criminal information was substituted, with the consent of the Court by order entered November 1, 1955. This was done in order to avoid the delay and expense of testing the soundness of certain technical legal questions raised by defendants in attacking the validity of the Grand Jury which had returned the indictment. By the Criminal Information No. 9584 the charges in the instant case, misdemeanors, are alleged. The maximum penalty for violations of Section 2 of the Sherman Act before July 7, 1955 was a $5,000 fine and/or one year imprisonment. On that date the maximum fine was raised to $50,000 by an amendment to the Sherman Act (26 Stat. 209; 15 U.S.C.A. §§ 1–3). The indictment by the Grand Jury was returned on the same day, July 7, 1955, that the Act increasing the fine was amended.

However, as the Criminal Information charges continuing violations by Safeway after the date of the amendment it is not contended by the defendants that the maximum fine for the Sherman Act violations would be $5,000 on each count if their plea of *nolo contendere* is accepted. It has been admitted in open court by the defendants that the maximum fine for the violations of Section 2 of the Sherman Act may be $50,000 if their plea of *nolo contendere* is accepted.

The information in Criminal Action No. 9584 contains three counts:

*Count I* charges Safeway, Warren and Cliff with a combination and conspiracy to monopolize interstate trade and commerce in the retail sale of food products in violation of Sec. 2 of the Sherman Act (26 Stat. 209, 15 U.S.C.A. § 2). Braun and Company of Los Angeles, Cal., a public relations counseling firm, is named as a co-conspirator, but is not made a defendant in the Information.

*Count II* charges the above named defendants with an attempt to monopolize in the retail sale of groceries in violation of Sec. 2 of the Sherman Act.

*Count III* charges Safeway and Warren with a violation of Sec. 3 of the Robinson-Patman Act (49 Stat. 1528, 15 U.S.C.A. § 13a) by selling groceries at lower prices in a part of the United States than elsewhere to destroy competition and eliminate competitors.

The Information further charges that Safeway established arbitrary sales quotas for its stores in Texas and New Mexico, amounting to 25 to 50 percent of the total retail grocery business in the areas, and required that these quotas be attained by Safeway personnel; that Safeway engaged in price wars in these areas for the purpose of destroying competition, and to accomplish this purpose operated stores below the cost of doing business, sold groceries below invoice cost, and sold in some areas at lower prices than in others.

The effects of these activities, it is charged, has been to restrain competition, exclude, damage and drive competitors out of business.

In view of the facts and charges above stated, what would be the effect of an acceptance of the defendants' plea of nolo contendere? To answer this question consideration must be given to the

general nature and implications of the plea of nolo contendere as such plea has been interpreted by the courts of this country. United States v. Norris, 1930, 281 U.S. 619, 50 S.Ct. 424, 74 L.Ed. 1076, seems to have established beyond question that if the plea of nolo contendere is accepted by the Court it is an implied confession of guilt, and for the purposes of the case only, equivalent to a plea of guilty. The plea admits for the purposes of the case all the facts that are well pleaded, 152 A.L.R. 278, and waives all formal defects in the proceedings of which the accused could have availed himself by a plea to the merits. 14 Am. Jur. 954. The plea has been described as a quasi confession of guilt, a confession, an implied confession, a plea of guilty substantially though not technically, a substitute for a plea of guilty, and a query directed to the Court to decide the defendant's guilt. 14 Am.Jur. 165 (1956 Pocket Part) Sec. 275. Counsel for the Government has described it as "a plea of guilty in Latin". Regardless of the label attached, it seems beyond question that for the purpose of the case a plea of nolo contendere is the full equivalent to a plea of guilty. That a sentence of either fine and/or imprisonment may be imposed after a plea of nolo contendere was established in Hudson v. U. S., 1925, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347. United States v. Norris, supra, 281 U.S. at page 623, 50 S.Ct. at page 425 stated the rule "* * * upon the question of guilt or innocence * * * the plea of nolo contendere * * * was as conclusive as a plea of guilty would have been."

■ The plea of nolo contendere unquestionably has the same effect as a plea of guilty so far as concerns the proceedings upon the Information, and although it does not create an estoppel in subsequent cases, it constitutes for purpose of the case an admission of guilt which is considered to be conclusively established.

Judgment of conviction follows upon such plea as well as upon a plea of guilty or conviction by a jury.

"Imposition of sentence follows as a matter of course, and a defendant who is sentenced upon a plea of nolo contendere stands convicted of the offense for which he was indicted. In imposing sentence, the Court's power to punish is in no way limited except as provided by law, and testimony bearing on the issue of punishment can be submitted to the Court." 152 A.L.R. 276.

In Judge Rossman's article, "Arraignment and Preparation for Trial", 5 F. R.D. 63, at page 69, it is stated:

" 'In recent years thousands of defendants have pleaded nolo contendere to indictments and criminal informations charging them with violating the antitrust laws. (Lenvin and Meyers, Nolo Contendere: Its Nature and Implications [51 Yale L.J. 1255]).'

 \* \* \* \* \* \*

"The committee which drafted the Criminal Rules said concerning the plea of nolo contendere:

" 'While at times criticized as theoretically lacking in logical basis, experience has shown that it performs a useful function from a practical standpoint.'

"We again quote from a treatise which we have frequently cited:

" 'The plea of nolo serves a practical function in the administration of justice. There are many situations, of which antitrust prosecution is one, where the crime is considered *malum prohibitum* rather than *malum in se*, and in such situations the prosecutor is often inclined to agree to the interposition of the nolo plea. This realistic policy dispenses with lengthy and expensive trials. A law enforcement agency having concurrent equitable and criminal power, like the Federal Antitrust

Division, frequently follows an indictment with a civil complaint, thereby seeking appropriate injunctive relief against the continuance of the offense charged in the indictment. Thus, the closing out of criminal cases by a nolo plea is simply preliminary to getting down to the job of eradicating the improper practices. At the same time, the pleader has paid his debt to society for past offenses and it can hardly be said that in making a nolo plea the accused leaves the question of his guilt undetermined.' (Lenvin and Meyers [p. 1268])."

■ The Government objects to the acceptance of defendants' plea of nolo contendere. One of the principal grounds for objection is that Safeway is a multiple offender, and has been convicted or has plead nolo contendere in at least five other cases, as follows:

Jan. 29, 1941. U. S. v. Food Distributors Ass'n et al. (D.Col.Cr. 9306) Safeway plead nolo contendere, and on Feb. 14, 1941 was fined $7,500.

June 26, 1941. U. S. v. Food and Grocery Bureau of Southern Cal. Inc., S.D. Cal., 43 F.Supp. 966. Safeway plead nolo, and on March 30, 1942 received a suspended sentence.

March 4, 1942. U. S. v. Cal. Retail Grocers Ass'n et al. (N.D.Cal.Cr. 27526-R). Safeway plead nolo and on Aug. 18, 1942 was fined a maximum of $5,000.

Jan. 20, 1943. United States v. Safeway, 10 Cir., 1944, 140 F.2d 834. Safeway plead nolo and on March 26, 1948 was fined $30,000.

March 8, 1948. U. S. v. Maryland & Virginia Milk Producers, D.C.D.C., 90 F.Supp. 681. Safeway was convicted and fined a nominal amount.

Cliff was not charged in any of these five cases and Warren was charged and fined in only one.

This record, says the Government, shows a disrespect by Safeway of the law. If this be accepted as a fact, it still does not follow that the defendants' plea of nolo contendere should be rejected in the case at the bar. The fact that the courts accepted pleas of nolo contendere in four of the five cases cited by the Government indicates that the courts regarded this as the most practical, logical and just disposition of the cases. It has not been contended that justice was not done in those cases by acceptance of pleas of nolo contendere. "In recent years thousands of defendants have pleaded nolo contendere to indictments and criminal informations charging them with violating the antitrust laws." 51 Yale L.J. 1255.

These prior convictions should have more bearing upon the sentence or punishment to be assessed than upon the issue pertaining to the acceptance or rejection of Safeway's plea of nolo contendere. In spite of a bad past record, there is nothing to prevent the court from permitting Safeway to enter its "plea of guilt in Latin" and assessing the appropriate punishment forthwith.

Another reason urged by the Government for rejecting Safeway's offered plea of nolo contendere is that acceptance would deprive private litigants of the benefits to be derived from a verdict of guilty under Section 5 of the Clayton Act, 15 U.S.C.A. § 16. Under this section a contested judgment or decree rendered in a suit brought by the Government under the antitrust laws shall be prima facie evidence against the defendants as to all matters respecting which judgment or decree would be an estoppel as between the parties thereto.

■ While the "Congress has * * * provided sanctions allowing private enforcement of the antitrust laws by an aggrieved party", Radovich v. National Football League, 352 U.S. 445, at pages 453–454, 77 S.Ct. 390, at page 395, 1 L. Ed.2d 456, in suits under Section 4 of the Clayton Act (38 Stat. 731, 15 U.S.C. A. § 15), for treble damages; and Section 5 of the Clayton Act was held in Emich Motors v. General Motors, 340

U.S. 558, 71 S.Ct. 408, 413, 95 L.Ed. 534 to "reflect a [Congressional] purpose to minimize the burdens of litigation for injured private suitors by making available to them all matters previously established by the Government in antitrust actions"; nevertheless, the Court's view in the instant case has been accurately expressed as follows:[1]

> "* * * the Government's responsibility in bringing cases of this nature is to vindicate the public interest in preserving a competitive economy rather than to redress private wrongs and recover damages for injuries sustained by individuals."

■ It is fundamental that the primary responsibility of the Government in a criminal case involves the consideration of public interests, not private interests.

As stated by Judge Tolin in United States v. Jones, D.C.S.D.Cal.1954, 119 F.Supp. 288, at page 290:

> * * * "It is always important for courts to avoid permitting criminal prosecution to be used as a means of redressing civil wrongs and, by means of a criminal judgment, procuring either directly or indirectly some advantage in a civil case."

The Government cites the case of United States v. Standard Ultramarine and Color Co., D.C.S.D.N.Y.1955, 137 F. Supp. 167 in support of its position. In that case six corporations were charged with conspiring to fix and maintain prices in the sale of dry colors throughout a nine year period. The volume of business involved amounted to some 37½

percent of the total national sales. The Court rejected the defendants' plea of nolo contendere. The aggravated nature of the offense is indicated by the Court's reference to the offense as "one of the more serious infractions of the law," at page 172. The Court in Ultramarine was concerned about securing the benefits of the criminal judgment for private litigants. However, the reasoning of Ultramarine strongly indicates that the Court took this position because no companion civil suit had been filed by the Government. Ultramarine distinguished the holding therein from that in United States v. Cigarette Merchandising Ass'n, D.C.S.D.N.Y.1955, 136 F.Supp. 212, where a plea of nolo contendere had been granted upon the point that in the Cigarette case a companion civil suit had been filed, whereas in the Ultramarine case there was no civil suit which might aid private litigants.

In the case at bar there is a civil suit pending on this Court's docket which may be brought to trial by the Government.

■ Judge Sugarman in United States v. Cigarette Merchandisers Ass'n, Inc., supra, has provided the answer to the Government's objections to acceptance of the defendants' nolo contendere pleas in the instant case. At page 213 his opinion states:

> "As to the first objection,—i.e., the oppressive manner in which the defendants enforced their restraints upon their victims—it is a sufficient answer that the sentencing court, on a plea of nolo contendere, may impose as severe a fine as upon a plea

---

[1]. Part V (pp. 1–2) of Bill of Particulars Filed by the United States Pursuant to Order of the Court, dated December 6, 1956, requiring specification of businesses in competition with Safeway that have sustained economic injury as a consequence of the illegal activities charged, states:

"Since the Government's responsibility in bringing cases of this nature is to vindicate the public interest in preserving a competitive economy rather than to redress private wrongs and recover damages for injuries sustained by individuals, the specification made herein is not intended to be a comprehensive list of all persons in the grocery business who may have sustained economic injury by reason of the illegal activities charged in the charging paragraphs of the Information."

of guilty or a finding of guilt after trial. * * *

"As to the second objection—i.e., the necessity of preserving to those victims in private treble damage suits the benefit of the government's prosecution, if it succeeds,—this may be accomplished by the simple process of the Attorney General going forward in the trial of the civil suit."

 This Court does not believe that Congress intended that pleas of nolo contendere be refused in criminal antitrust cases for the purpose of aiding private litigants under Section 5 of the Clayton Act. That section, as amended (69 Stat. 283; 15 U.S.C.A. § 16) in paragraph (a) provides: "That this section shall not apply to consent judgments *or decrees entered before any testimony has been taken* or to judgments or decrees entered in actions under Section 4A." If such had been the intent of Congress it would have been a simple matter to delete the phrase *"or decrees entered before any testimony has been taken"* from this provision of Section 5 of the Clayton Act, and by so doing private litigants would have secured the benefit of criminal convictions as prima facie evidence upon acceptance of a plea of nolo contendere. It must be assumed that Congress was aware of the fact that a plea of nolo contendere results in a judgment *before any testimony has been taken.* It must further be assumed that Congress was conscious of the fact that "a great majority of these cases are disposed of without trial" (Judge Yankwich, "Observations on Anti-Trust Procedures", 10 F.R.D. 165–166).

Further indication of Congressional intent is to be found in the 1955 amendment to the Sherman Act by the Eighty-fourth Congress, 1st Session, 69 Stat. 282. That amendment increased the maximum fine from $5,000 to $50,000 for violations of the Sherman Act. Congress at that time evidenced an intense interest in increasing the maximum penalty that could be assessed by the Court upon acceptance of a plea of nolo contendere, but in no way indicated that pleas of nolo contendere should not be accepted. After due consideration of this phase of the antitrust laws Congress left the acceptance or rejection of the pleas of nolo contendere to the discretion of the Court.

By the Act of June 29, 1940 (54 Stat. 688), Fed.Rules Crim.Proc. 18 U.S.C.A. page XIV, Congress conferred upon the Supreme Court the authority to prescribe the Federal Rules of Criminal Procedure. The rules became effective March 21, 1946, after having been reported to Congress by the Attorney General in January 1945; and Rule 11 has expressly provided that "a defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*". In the years since the promulgation of these rules no legislation has been enacted that could be construed as withdrawing from the court its discretion under Rule 11 concerning nolo contendere pleas. It must be assumed that Congress is satisfied with the rule and its application. In discussing Rule 11, 4 Barron & Holtzoff, Federal Practice & Procedure, Criminal, Sec. 1973 states: "the plea of nolo contendere is frequently entered in prosecutions under the anti-trust laws, where civil actions for injunctions based upon the same acts are pending or contemplated." [2]

---

2. 4 Barron & Holtzoff Federal Practice & Procedure, Criminal, p. 852, sets forth the following from the Notes of the Advisory Committee which drafted the Criminal Rules, concerning Rule 11:

"1. This rule is substantially a restatement of existing law and practice. 18 U.S.C. § 564 (now repealed)

(Standing mute); Fogus v. U. S. [4 Cir.], 34 F.2d 97 (duty of court to ascertain that plea of guilty is intelligently and voluntarily made.)

"2. The plea of nolo contendere has always existed in the Federal courts, Hudson v. U. S., 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347; United

Judge Nordbye in Twin Ports Oil Co. v. Pure Oil Co., D.C., 26 F.Supp. 366, at page 371 made an extensive analysis of the legislative history of the Clayton Act as related to pleas of nolo contendere. It was stated:

"Congress apparently intended to encourage consent judgments and decrees. It sought to induce a prompt surrender to the Government's demands by excluding consent judgments and decrees from the prima facie rule. * * * The query is, however, does this exception also apply to judgments entered on pleas of guilty and pleas of nolo contendere in criminal cases? * * * Congress intended to refer to both criminal and equity proceedings in exempting consent judgments or decrees."

At page 372:

"Reason and common sense suggest that, if Congress intended to avoid long civil proceedings by encouraging consent decrees, the same consideration would apply to criminal proceedings. Congress was not obliged to make the way easier for private litigants. The prima facie feature of judgments and decrees entered in proceedings instituted by the Government was an innovation of the Clayton Act, and in considering the past experience with reference to the advantage of consent decrees and pleas of guilty, it was apparently assumed that the provisos would redound to the public good."

The following statement from the Ultramarine case tends to support the Government's position concerning the exemption under Section 5 of the Clayton Act, but it seems that this is a small minority view:

States v. Norris, 281 U.S. 619, 50 S. Ct. 424, 74 L.Ed. 1076. The use of the plea is recognized by the Probation Act, 18 U.S.C. § 724 (now § 3651). While at times criticized as

"Its use for 'practical purposes' to avoid the issues inherent in a guilty plea does not necessarily reflect congressional purpose to extend the exemption provision of § 5 to defendants in criminal antitrust suits. In any event, the short answer to the defendants' contention is that Rule 11 of the Federal Rules of Criminal Procedure vests the Court with discretion to accept or reject the tendered plea."

With the last sentence of the above statement there is no disagreement. However, the general acceptance of the thesis that wide discretion is vested in the Court to accept or reject the plea of nolo contendere offers no reasonable or logical connection with the previous statement concerning Congressional purpose. That portion of the above statement seems to be contrary to the expressions of Congress, and to the thousands of cases in which pleas of nolo contendere have been accepted.

■ While the condition of the Court's docket would not be reason for the acceptance of the pleas of nolo contendere, the fact is that all other litigation in the Fort Worth, Abilene and San Angelo Divisions of the Northern District of Texas would necessarily be delayed and all other litigants would be denied the right to speedy trial during the trial of this case, estimated at a minimum of three months, if such pleas be not accepted. The benefits to be derived from a long, expensive trial are not sufficient in the instant case to justify the rejection of defendants' offered pleas of nolo contendere. The saving of time and expense has been recognized as a factor in the acceptance of pleas of nolo contendere.

In U. S. v. Allegheny County Retail Druggists Ass'n, D.C.W.D.Pa., Cr. 13470, Oct. 8, 1953, the Court observed:

theoretically lacking in logical basis, experience has shown that it performs a useful function from a practical standpoint."

"That a plea of nolo contendere substantially saves the Government a tremendous expense—a tremendous expenditure in proceeding to trial."

Because acceptance of the pleas of nolo contendere is supported by the overwhelming weight of authority, and because the Court is of the opinion that the ends of justice will be served and the public interest will be vindicated by the acceptance of the pleas, the motion of defendants for leave to withdraw their respective pleas of not guilty and enter pleas of nolo contendere is granted, and consent is granted to the acceptance and entry of the pleas of nolo contendere by each of the defendants.

It is so ordered.