## BROWN v. UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF ARKANSAS.

No. 758. Submitted October 19, 1893. — Decided November 6, 1893.

The ruling in *Logan* v. *United States*, 144 U. S. 263, that, " upon an indictment for conspiracy, acts or declarations of one conspirator, made after the conspiracy has ended, or not in furtherance of the conspiracy, are not admissible in evidence against the other conspirators," affirmed and followed.

THE case is stated in the opinion.

*Mr. A. H. Garland* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendants in error.

MR. JUSTICE JACKSON delivered the opinion of the court.

John Brown, the plaintiff in error, was indicted and convicted for the murder of Josiah Poorboy and Thomas Whitehead, on December 8, 1891, at the Cherokee Nation in the Indian Territory, and on April 30, 1892, was sentenced to be hanged.

It appears from the record that Poorboy and Whitehead were deputy marshals who had been trying to arrest James Craig, an escaped prisoner, for whose apprehension a small reward had been offered, and who was the co-respondent in a suit brought by Brown Hitchcock against his wife for divorce on the ground of adultery.

On the night of the murder, the plaintiff in error with John Roach and Wacoo Hampton, an escaped convict, were at the house of Mrs. Hitchcock, and at her request started out to find Craig. They did not succeed, and on their way back Hampton, who had gone on a short distance ahead, stopped in front of the house of Shirley, where it was known White-

head was staying, and called out for Whitehead. The latter came out accompanied with Poorboy, both being armed. As they appeared Wacoo Hampton rode off, and about the time the marshals reached the roadway Roach and the plaintiff in error, mounted on one horse, rode up. Whitehead asked if either of them was Matthew Craig, a brother of James Craig, and when he was told no, he said he "would arrest them anyhow," and told them to get off the horse and lay down their guns. They dismounted, and Roach laid his gun down on the ground. As he straightened up, some one fired and the shot struck him in the arm. He then ran away, but Wacoo Hampton returned, and a shooting affray ensued. The proof tended strongly to establish the fact that the plaintiff in error killed Whitehead, but as to whether he or Wacoo Hampton killed Poorboy the testimony was inconclusive. A few days after the murder Hampton, who resisted arrest, was killed.

Among the assignments of error specially relied on, and which is apparently well taken, is the seventh assignment. As presented in the record by the plaintiff in error, it is claimed that the court charged the jury that "if self-defence does not exist, the only other condition that can exist in the case is a state of murder." This charge would have been clearly erroneous, but, by reference to the charge of the court itself, it appears that the assignment of error omits a material part of the charge. What the court really said was this: "I give you the law of manslaughter because it has been invoked in the case, and you are to see whether it exists; and because you may apply the doctrine of exclusion to enable you to come to the conclusion as to whether murder exists or not, because, if self-defence does not exist, *and if manslaughter does not exist*, the only other condition that can exist in the case is a state of murder. Manslaughter is the wilful and unlawful killing of a human being without malice aforethought, and it occupies a midway position between a state of case where the law of self-defence would apply and a state of case where the law defining murder applies." This language and what was said in other parts of the charge upon the subject of manslaughter, as set out in the record, is not open to exception.

It is next insisted, on behalf of the plaintiff in error, that the court erred in refusing to give the following instruction, which was asked for the defendant:

"1. Manslaughter is an unlawful and wilful killing, but without malice, and is punishable by imprisonment not exceeding ten years and fine not exceeding one thousand dollars.

"2. If you believe, from the evidence in this case, that the deceased were attempting to make an illegal arrest of the defendant, and that the defendant, in resisting such illegal arrest, either by himself or in conjunction with his companions, killed the deceased, one or both, then the attempt to illegally arrest the defendant would be such a provocation as would reduce the offence to manslaughter, though the killing was done with a deadly weapon."

This was refused because the court had already fully instructed upon the subject of manslaughter, and by reference to the record it appears that the charge as given, which defined manslaughter to be "the wilful and unlawful killing of a human being *without malice aforethought*," was more accurate than the instruction asked for, which omitted the element of the killing being without any malice either express or implied. After what the court had said, and in the form presented, we think this instruction was properly refused.

The remaining point to be considered is covered by several assignments, which charge error in the court below in admitting testimony of subsequent declarations or statements of one party tending to show that there was a conspiracy to commit murder, and in charging the jury on that subject.

It appears in the evidence that while on their mission to find Craig, Wacoo Hampton said to Roach and the plaintiff in error that he intended to kill Brown Hitchcock, the husband of Mrs. Annie Hitchcock, with whom she had quarrelled on account of the suit for divorce which her husband was prosecuting. It was claimed on the part of the government that this statement of Wacoo Hampton showed a conspiracy to commit an unlawful act, and while engaged in this unlawful enterprise the murder of Poorboy and Whitehead was perpetrated. Roach, who was wounded on the night of the

murder and was taken to the house of Mrs. Hitchcock, remained there all night. On the following morning Sullivan, a witness for the government, and his step-son were riding by the house of Mrs. Hitchcock, and saw her on the porch. He thought she called to him, and he stopped his horse, but she told him not to come in. She said she wanted his step-son. The young man went into the house, and remained there four or five minutes.

In offering this evidence the district attorney said that he proposed to show a conspiracy between Mrs. Hitchcock, the plaintiff in error, Wacoo Hampton and Roach to kill Brown Hitchcock; that she was primarily responsible for the murder, and that they went by her direction on that evening for the purpose of committing murder. The district attorney assumed that she did not want Sullivan to come into her house, because Roach was there. The counsel for the plaintiff in error strenuously objected to the admission of the testimony of Sullivan as to what Mrs. Hitchcock said, on the ground that, even if she were a co-conspirator, her statements and declarations, made after the killing, were not competent against the plaintiff in error. The court held that the witness might testify as to what Mrs. Hitchcock said as tending to establish the conspiracy. On the subject of conspiracy the court in its charge said:

"You are to look at it as the motive power which may point to the act done, only by circumstances, such as association of the parties together, such as their being connected together at the time of the doing of the act, such as their association after the act, such as their declaration as to their participation in the act. All these things may be taken into consideration by you for the purpose of showing the existence of conspiracy, of an unlawful understanding to commit the act that was a crime, that was an act of murder."

And in that connection the jury were further instructed that:

"If the defendant was on an unlawful mission, if he had entered into an understanding to kill Hitchcock, or if he had entered into an understanding to assist others in resisting

arrest, or resisted an arrest that could properly be made, he was entering upon the commission of an act where there was a purpose to do an unlawful act, and he would be in the wrong; he would be entering upon a state of case that he had no right to enter upon.

"If the defendant was travelling with Wacoo Hampton for the purpose of preventing his being arrested, prompted by a determination to resist efforts to arrest him, then he was in the wrong; he had entered upon the performance of an unlawful enterprise of a character that might result in death, an enterprise that was unlawful under the law, because Wacoo Hampton had no right to resist arrest. It was his duty to submit to arrest at the hand of any officer or any citizen, and whoever engaged in criminal purpose to assist him in resisting that arrest had entered upon the execution of a wrongful act of [such] a character that, if the arrest was attempted to be executed and resistance offered, it might result in death; and when parties agree to enter upon a common criminal enterprise of that kind, of the kind that as the direct result of its execution death may be the consequence, and the party or parties killed were seeking to make the arrest in the proper way of another than the defendant in this case, killed by Hampton, for example, the act of Hampton in killing was the act of this defendant, because, it is an act that would naturally, reasonably, and probably grow out of the resistance to the arrest offered or agreed to be offered. . . . If there was a design upon the part of this defendant to assist Wacoo Hampton in resisting that arrest, and in the resistance offered to it these two men were killed, the act of killing would be the act of the defendant, and the act of killing would be an act of murder upon the part of all who participated in it, of all who entered into the unlawful agreement to resist arrest, and who were present at the execution of that unlawful agreement which resulted in the death of the parties."

Considered in connection with these instructions, the court improperly admitted the testimony, as to what Mrs. Hitchcock said after the killing, as evidence tending to establish a conspiracy between the plaintiff in error and herself and others to

kill her husband. It was furthermore objectionable because there was no evidence in the case tending to show that the defendant, or his alleged co-conspirators, killed either of the deceased under the mistaken supposition that either one of them was Hitchcock. In the admission of the statements and declarations of Mrs. Hitchcock the court assumed that the acts and declarations of one co-conspirator, after the completion or abandonment of a criminal enterprise, constituted proof against the defendant of the existence of the conspiracy. This is not a sound proposition of law.

In *Logan* v. *United States*, 144 U. S. 263, 309, Mr. Justice Gray, speaking for the court, said: "The court went too far in admitting testimony on the general question of conspiracy. Doubtless in all cases of conspiracy, the act of one conspirator in the prosecution of the enterprise is considered the act of all, and is evidence against all. *United States* v. *Gooding*, 12 Wheat. 460, 469. But only those acts and declarations are admissible under this rule which are done and made while the conspiracy is pending, and in furtherance of its object. After the conspiracy has come to an end, whether by success or by failure, the admissions of one conspirator by way of narrative of past facts, are not admissible in evidence against the others. 1 Greenl. Ev. § 111; 3 Greenl. Ev. § 94; *State* v. *Dean*, 13 Iredell, 63; *Patton* v. *State*, 6 Ohio St. 467; *State* v. *Thibeau*, 30 Vermont, 100; *State* v. *Larkin*, 49 N. H. 39; *Heine* v. *Commonwealth*, 91 Penn. St. 145; *Davis* v. *State*, 9 Tex. App. 363." The same proposition is stated in the following authorities: *People* v. *Davis*, 56 N. Y. 95, 103; *New York Guaranty & Indemnity Co.* v. *Gleason*, 78 N. Y. 503; *People* v. *McQuade*, 110 N. Y. 284, 307; also Wharton, Crim. Ev. (9th ed.) § 699.

Tested by the rule laid down in these cases, the acts and declarations of Mrs. Hitchcock, on the morning after the killing, were not competent evidence against the plaintiff in error, of the existence of any conspiracy on his part, to kill her husband, or to resist the arrest of Hampton, or to commit any other unlawful act, such as the court instructed the jury would render him responsible for the acts done by his associates while engaged in a criminal enterprise. If a conspiracy was sought

to be established affecting the plaintiff in error, it would have to be by testimony introduced in the regular way, so as to give the accused the opportunity to cross-examine the witness or witnesses. It could not be established by acts or statements of others directly admitting such a conspiracy, or by any statement of theirs from which it might be inferred.

The case having to be reversed for this error, it is not deemed necessary to consider the other assignments relating to matters which may not occur upon another trial.

For the erroneous action of the court below in improperly admitting the testimony of Sullivan as to what Mrs. Hitchcock said after the killing, as evidence tending to show a conspiracy, and in charging the jury that the declarations of a party or parties as to their participation in the criminal act were competent evidence of the conspiracy, as against the plaintiff in error, the judgment of the court below must be

*Reversed, and the cause remanded to the Circuit Court of the United States for the Western District of Arkansas, with direction to set aside the judgment, and award plaintiff in error a new trial, and it is accordingly so ordered.*