**ROYAL INS. CO., Limited, v. EASTHAM.**

**FRANKLIN FIRE INS. CO. OF PHILADELPHIA v. SAME.**

**No. 7306.**

Circuit Court of Appeals, Fifth Circuit.

June 9, 1934.

Rehearing Denied July 18, 1934.

F. W. Davies, of Birmingham, Ala., for appellants.

Niel P. Sterne, of Anniston, Ala., for appellee.

Before BRYAN, FOSTER, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This suit is on fire insurance policies on account of fire damage to furniture sustained in a fire in plaintiff's residence, March 19, 1932. The defenses were arson, and fraudulent and false swearing in the proofs of loss and in the suit. There is a counterclaim to recover back moneys the company had paid Eastham on account of damage to his house from the same fire, and damage he had sustained in a fire in his residence just a year before. By these appeals consolidated under one number, appellants challenge the result below as fundamentally unjust to them. Arguing the case here as they did to the jury and to the trial court, they urge upon us that plaintiff's conduct and actions as they relate to his claims on the policies, both before and since the fire, so smell to heaven of fraud and rascality that the verdict he got ought not to stand. Specifically, the claim is that the proof overwhelms that the two fire losses he suffered within the year, together with other fires and dynamitings occurring in that vicinity, were set out by incendiaries in plaintiff's employ, with spleen and revenge as the motives for some of the outrages, and the insurance he had the motive for the fires in his home. They claim, too, that by false swearing in connection with the proofs of loss and other papers and proceedings relative to his claim, plaintiff has cut himself off from recovering. Beside these claims of fundamental error there are claims of errors in rulings on evidence, in refusing special charges, and in denying plaintiffs' motions for a new trial, an ordinary one claiming errors on the trial; an extraordinary one based on a claim of newly discovered evidence.

Plaintiff insists that all of this is water under the mill; that every matter now complained of was presented to the District Judge below, and by him correctly ruled. He argues that defendants were offered every opportunity to prove their defenses to the jury.

He points to the voluminous record for confirmation. He asserts that they were in fact given far too wide latitude in proving matters having no direct, and hardly any indirect bearing on the fire loss claims, and sensationally prejudicial to him. That defendants, in respect of their testimony and the instructions the court gave, were in no manner limited in making their defenses. He insists that the District Judge correctly submitted to the jury for their resolving every issue the defendants presented, and that the jury, upon amply supporting testimony, resolved these issues against defendant. He says that all of defendants' lurid and sensational testimony was directly denied, and their witnesses impeached, and that unqualifiedly put to the jury it was not believed by them. He argues that in effect all the defendants are trying to do here is to get a rehearing of the case by another jury which they hope will be more favorable to their claims. Of the evidential points raised by defendants, plaintiff says that none of the rulings complained of were in fact erroneous; that if there was error, it was not correctly saved; and further, in view of the enormous mass of testimony the defendants put in, the error, if there was any, was academic and unsubstantial, and furnishes no ground for setting the verdict aside.

As to the claimed errors in overruling the ordinary and extraordinary motions for a new trial, plaintiff points out that such rulings are discretionary, and only when clear abuse is shown will the action of the District Judge be disturbed. He insists that no abuse whatever is shown here in respect to them. That on the contrary, the record shows a careful and painstaking consideration and a correct disposition of them.

Because of the gravity of the charges made against plaintiff and particularly because of his admission of attempted bribery, we have read the record with great care. We have given particular consideration to defendants' insistence, Assignments Nos. 1, 9, 10, that their proof of the dynamitings and burnings going on in the community and of Eastham's admission that he attempted to bribe the fire marshal not to charge him with complicity in them, taken with the other evidence in the case, have so discredited him and his claims that a verdict for him may not stand.

We cannot agree with defendants that the evidence demanded a verdict for them, or that there was abuse of discretion in refusing their motions for a new trial. Serious and damaging as were the charges and proofs against him, plaintiff met them with opposing

proofs. As to the bribe, he testified that this was induced not by a sense of guilt, but by blackmail through threats of public charges, and in this he was not without corroboration. Of other testimony against him it may be said that the witnesses offering it were impeached, and that all of the adverse testimony was flatly denied by plaintiff and his witnesses. In the long drawn out trial, with its sensational charges and proofs, the court gave defendants the widest latitude in searching out the truth, to inquire fully into matters which, though collateral, might throw light on motives and actions. In addition to the direct testimony, there was a mass of circumstantial evidence offered by both sides. Veracity and credibility were directly attacked and supported. The very gravity of the charges, the sharp contradictions the evidence afforded, the wide range it took, made this peculiarly a jury case. It was for the jury to weigh it all and to say whether the defenses were made out. There was ample evidence to support the view they took that they were not. Because this is so, we may not disturb the verdict as unfounded in fact, or the judgment on it unless from appellants' assignments it appears that the conduct of the trial was marked by reversible error, within the meaning of section 269, Judicial Code, 28 USCA § 391, that is, errors affecting the substantial rights of the parties. Missouri Valley Bridge & Iron Co. v. Blake (C. C. A.) 231 F. 417; Community Natural Gas Co. v. Henley (C. C. A.) 54 F. (2d) 59.

■ We turn then to the consideration of the claimed errors. Some of them are so lacking in merit as to be frivolous. The assignments complaining that plaintiff was allowed to prove more damage on some items than he had claimed in his proofs of loss are of this kind. It is perfectly clear from the evidence that the failure to claim these amounts was inadvertent, and that defendants were not prejudiced thereby. Equally without merit are the assignments complaining of the statement of the court preliminary to his charge to the jury, that there was no issue as to the 1931 fire, and his refusal to submit defendants' charges as to whether claims made by plaintiff in connection with that fire were falsely made. The bona fides of the 1931 fire and of claims made on account of it, were not put in issue by any evidence in the case. There was some suspicion directed that way by the bribe evidence, but no evidence whatever was offered tending to impeach that fire or the settlement made on account of it. There were in short no issues regarding the 1931 fire to submit to the jury. Besides, defendants' exception to the informal preliminary summation of the issues by the court presented nothing for review. It cannot be told from it what part of the summation was excepted to, nor the grounds of the exception.

The assignments to the refusal to permit Frank Raper to testify to Jim Raper's ability to work, and Crewes to answer whether or not he took affidavits in connection with his investigation, are equally frivolous and unsubstantial. On their face the questions are objectionable. No prejudice resulted from these rulings.

■ Defendants' seriously urged assignments fall into three groups. The first consists of those to the refusal of the court to charge the jury as to specific articles set out in the requested charges, that if plaintiff willfully swore falsely as to the cost or value of any of them they should find for defendants. The refusal of these charges was not error. The court's general charge was most favorable to defendants on these points. The jury were instructed generally that if they found that plaintiff had, after the fire, made a false statement in regard to any of his insurance claims with intent to deceive the defendants, this would defeat his recovery on all of them.

A second group challenges rulings excluding offered evidence, and a third the court's denial of the motion for new trial for newly discovered evidence.

■■ Taking up those to the exclusion of the evidence, they relate first to an offer to prove by John Raper that Ray Smith, some months after the fire for which plaintiff sues, had offered him the job of dynamiting the Emory plant, and also had told him that Mr. Eastham wanted his house burned again, and to the question to Frank Raper: "Did he offer you the job of burning the house again?"

The theory on which these offers were made is that defendants had sufficiently proved a general continuing conspiracy to dynamite plants and fire houses existing between Eastham, Smith, and Raper to make admissible anything that Smith may have said to anybody at any time, about burning and dynamiting, as well after as before the occurrence of the fire sued on. We think there was no reversible error in the rulings. The question asked Frank Raper is without meaning. On its face it points to no error, nor does the record otherwise identify the "he" referred to. Neither is there a statement of what could or would have been proven by him. But if we assume that "he " referred to was Ray Smith,

and that Raper would have answered that "he did," the court did not err in excluding the answer to that question, or the offer of proof by John Raper. Any conspiracy which might have existed to burn the house to obtain the insurance sued for was over with that burning. Upon the plainest principles statements by Smith as to future contemplated activities having nothing to do with the fire in suit, would be inadmissible against Eastham. They would be inadmissible as hearsay, both because an attempt to prove not acts done under, but statements as to the existence of a conspiracy, and because the particular conspiracy for the burning with which the suit is concerned, if it ever existed, was over. Bryan v. United States (C. C. A.) 17 F.(2d) 741; Brown v. United States, 150 U. S. 93, 14 S. Ct. 37, 37 L. Ed. 1010. Besides, even if the matters inquired about had been relevant to the issue before the court, which they were not, it was within the sound discretion of the District Judge to determine whether the state of the proof of conspiracy was such as to make the offered statements of Smith admissible against Eastham. No abuse of that discretion was shown.

We come now to the ruling on the evidence on which defendants most strongly rely, the refusal of the court to permit them to lay a predicate for the impeachment of and to impeach their witness Jim Raper. The arguments on it exhibit great contention and counter contention. Appellants invoke the rule now generally prevailing, that an offerer who has without fault been surprised by the testimony of his witness through having been misled by him as to what he would say, may be permitted to show this and to show the contradictory statements which misled him. Louisiana Ry. & Navigation Co. v. McGlory (C. C. A.) 20 F.(2d) 545; Sneed v. U. S. (C. C. A.) 298 F. 911; Collins v. State, 101 Tex. Cr. R. 135, 274 S. W. 586, 587; Georgia Casualty Co. v. Waldman (C. C. A.) 53 F.(2d) 24. Appellants insist that the Alabama rule is that while an offerer may, by examining the witness himself, prove, if he can, that he has been surprised and misled, he may not put on independent testimony to do it, Alabama Power Co. v. Hall, 212 Ala. 638, 103 So. 867, and that the federal courts where a state rule of evidence is established, will ordinarily follow it. Myers v. Moore-Kile Co. (C. C. A.) 279 F. 233; Hinds v. Keith (C. C. A.) 57 F. 10; Standard Oil Co. v. Cates (C. C. A.) 28 F. (2d) 718. Appellants reply, citing De Soto Motor Corp. v. Stewart (C. C. A.) 62 F.(2d) 914; 2 Cyc. Fed. Procedure § 273, p. 830, that in evidential matters of this kind the federal courts follow their own rule. Appellee pointing to the record showing that without any objection having been made by him, and without any clear statement by appellants of what they intended to do about it, appellants had left the matter in the shape it was in, when the court, of his own motion, stated he would not permit them to offer contradictory statements to impeach their witness, argues further that no specific question having been asked, and no specific offer of proof made, no error is pointed out for this court to review. He argues also that at last the matter is discretionary with the trial court, and that in no event could it be held, under the circumstances, to have been reversible error to refuse to permit contradictory statements to be shown.

■■■■■ There is conflict of opinion as to whether, in evidential matters of this kind, federal courts will follow the decisions of the state of the trial. We think that there is no hard and fast rule that they must, or they must not. We think it was within the sound discretion of the trial judge here to determine which rule he would follow, and that no abuse of that discretion is shown. Evidence of the kind in question is ordinarily admitted where, from the way the testimony comes in, it is plain to the court that there has been surprise, and that injury has resulted from that surprise which should be rectified. It is ordinarily admitted, not for the purpose of proving as facts the facts contradictorily stated, but to relieve the offerer of the position he finds himself in of, without fault of his own, vouching for a witness who has played him false. It is not a fixed rule to be applied to all cases the same way. It appropriately applies in cases where the surprise is immediately claimed, and the examination ending, the effect of the damaging statement thus inadvertently brought in is at once sought to be removed. It is generally not appropriately applied where, as here, the witness whose testimony is claimed as surprising and hostile is fully examined in regard to matters as to which it is claimed he has made contradictory statements before surprise is claimed and the right to impeach by independent proof is invoked. Here, either with the purpose of getting all of his answers into the record as a basis for getting the statements they wanted before the jury in the form of contradictions, or of following the Alabama rule, they conducted a complete examination of the witness before they claimed surprise and asked for leave to offer contradictory statements. If the defendants were surprised, it took them a long time to discover that they were. Under these cir-

cumstances, the court correctly exercised its discretion in refusing to permit in effect, a full examination of the witness as a predicate to get into the evidence the damaging statements against Eastham which it was claimed the witness had previously made. There was no error in the ruling.

The assignments on the refusal to grant a new trial for newly discovered evidence must also be overruled. The record shows that the court took oral testimony on the hearing of this motion; that he heard the witnesses at length, and fully informed himself of the nature and effect of the offered proof and the circumstances of its offer. It was for the trial judge to say, in the exercise of an informed discretion, whether the proof made out a case for granting the new trial. It was for him to say whether sufficient diligence had been shown, whether the proffered testimony was more than merely cumulative, whether and to what extent it was material, and the probable effect it would have in changing the result on another trial. In the absence of a clear showing of abuse of discretion, his action stands. Chambers v. Anderson (C. C. A.) 58 F.(2d) 151. No such showing is made.

The judgment is affirmed.