Steven I. GREER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 5137.

United States Court of Appeals
Tenth Circuit.

Nov. 2, 1955.

Calvin L. Rampton, Salt Lake City, Utah (Zar E. Hayes, Salt Lake City, Utah, on the brief), for appellant.

A. Pratt Kesler, U. S. Atty., Salt Lake City, Utah, and William L. Anderson, Attorney, Agriculture Department, San Francisco, Cal., for appellee.

Before PHILLIPS, Chief Judge, HUXMAN, Circuit Judge, and SAVAGE, District Judge.

HUXMAN, Circuit Judge.

Steven I. Greer and one Leslie W. Burnham were jointly charged under the first four counts of an eight count indictment with violations of 18 U.S.C.A. § 1001 and 18 U.S.C.A. § 371. Appellant Greer was charged alone in counts five, six, seven and eight with violations of 15 U.S.C.A. § 714m(a) and (b).[1] Counts six and eight were dismissed. Defendants went to trial on the remaining counts before a jury. The jury found Greer guilty on counts one, two, three and four and not guilty on counts five and seven.[2]

Counts one and two charged the defendants with having misrepresented the true grade and shrinkage of various lots of wool placed under the Wool Price Support Program administered by the Commodity Credit Corporation, herein called Commodity, in violation of 18 U.S.C.A. § 1001.

Count three charged that between May 1, 1952, and January 1, 1953, the defendants conspired to commit the offenses charged in the substantive counts in violation of 18 U.S.C.A. § 371. Count four charged both defendants with fraud in the preparation of and sampling of bags of wool.

Count five charged Greer with making false statements for the purpose of obtaining money under the 1952 Wool Price Support Program, in violation of 15 U.S.C.A. § 714m(a), and count seven charged him with unlawfully filing with Commodity a wool handler's advance

---

1. Sec. 714m (a) and (b) read as follows:
   "(a) Whoever makes any statement knowing it to be false, or whoever willfully overvalues any security, for the purpose of influencing in any way the action of the Corporation, or for the purpose of obtaining for himself or another, money, property, or anything of value, under sections 714–714o of this title, or under any other Act applicable to the Corporation, shall, upon conviction thereof, be punished by a fine of not more than $10,000 or by imprisonment by not more than five years, or both.

   "(b) Whoever, being connected in any capacity with the Corporation or any of its programs, (i) embezzles, abstracts, purloins, or willfully misapplies any money, funds, securities, or other things of value, whether belonging to the Corporation or pledged or otherwise entrusted to it; or (ii) with intent to defraud the Corporation, or any other body, political or corporate, or any individual, or to deceive any officer, auditor, or examiner of the Corporation, makes any false entry in any book, report, or statement of, or to, the Corporation, or draws any order, or issues, puts forth or assigns any note or other obligation or draft, mortgage, judgment, or decree thereof; or (iii) with intent to defraud the Corporation, participates or shares in, or receives directly or indirectly any money, profit, property, or benefits through any transaction, loan, commission, contract, or any other act of the Corporation, shall, upon conviction thereof, be punished by a fine of not more than $10,-000 or by imprisonment for not more than five years, or both."

2. Since Burnham has not appealed, reference need not be made to the jury verdict against him or the sentences imposed thereon.

**548**

loan note, in violation of 15 U.S.C.A. § 714m(b).

The transactions out of which these prosecutions arose are these. For a number of years prior to 1952 appellant, Steven I. Greer, his son, Ira K. Greer, Walter K. Gooding, and Walter K. Gooding, Jr., had been members of a partnership engaged in a wool brokerage business under the name of Inland Wool Company, herein called Inland. For several years prior to 1952 Inland had had contracts with Commodity to act as a handler of wool under the Government Price Support Program. Under this program Commodity makes loans to growers. Under the contract between the Government and the handler, the handler acts as a representative of the grower in taking the wool into warehouses, grading it, if necessary, and presenting it to the Government's appraisers for appraisal for loans.

In March, 1952, the Goodings left the partnership and in January, 1953, went into business on their own account. Leslie W. Burnham entered the employ of Inland and was with the partnership during 1952. When the Goodings formed their own company, Burnham quit the employment of Inland as of January 1, 1953, and went to work for the Goodings.

Nine assignments of error are urged for reversal. It is urged that the court erred in overruling defendants' motion for a directed verdict and for an instructed verdict of acquittal. This was a fraud case and a charged conspiracy to defraud. As in all such cases a great amount of evidence was introduced. The evidence in this case, as generally in such cases, was in sharp conflict. We have examined the two volumes of evidence and the exhibits, and it is sufficient to say there was a sharp conflict in the evidence which presented a jury question, and in our view the case was properly submitted to the jury for this purpose.

It is urged that the court erred in admitting the testimony of Jack Mack, Milo Marsden, Walter Gooding and Roland A. Reed. They testified to statements made to them by Leslie W. Burnham which were offered and would tend to establish that a conspiracy did exist between him and his partner, Greer.

It is the well established law that the admissions of one partner tending to establish the existence of a conspiracy are admissible against the other partners. The only limitation on the testimony is that the admission be made during the existence of the alleged conspiracy. The theory upon which such evidence is received is that each member of a conspiracy is the agent of each other member. When the conspiracy ends the agency ends and admissions made thereafter are no longer admissible against other members of the conspiracy.[3]

Mack testified to a conversation he had with Burnham in March, 1953. Marsden likewise testified to a conversation with Burnham after Burnham had severed his connection with Greer. Reed testified to a conversation with Burnham about April 11, 1953. At all times when these conversations were held, Burnham was no longer a member of the partnership. He had severed his connection with the partnership on January 1, 1953. Furthermore, the indictment states that the conspiracy came to an end as of January 1, 1953. Declarations made by Burnham to these witnesses were therefore inadmissible against Greer and the testimony of these witnesses should have been excluded.

The Government urges that no timely or proper objection was made to the admission of this testimony. There is much confusion in the record on this point, both with respect to the theory of the court in admitting this testimony and the objections made thereto by de-

3. Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Brown v. United States, 150 U.S. 93, 14 S.Ct. 37, 37 L.Ed. 1010; Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196; Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593; Bartlett v. United States, 10 Cir., 166 F.2d 920.

fendants. At one point the court stated that this evidence was admissible against Greer on all counts except five and seven. That would include some of the substantive counts as well as the conspiracy count. Since the judgment must in any event be reversed as is hereinafter pointed out, we are not concerned with whether correct technical objections were made to this evidence.

■■ Error is predicated upon the court's exclusion of appellants' exhibits A, B, C, V, W and GG. Exhibits A, V and W were photographs, apparently taken some time in 1953 or 1954. Exhibit A showed Burnham at his grading table with various carts about him. Exhibit V showed a pile of original bag wool. Exhibit W showed wool after it had been graded. Exhibits B and C were fleeces of wool brought into court and offered in connection with the cross-examination of Government witnesses, Young and Pedersen. The value of these exhibits is problematical and the trial court was well within its discretion in refusing their admission. It was the Government's position that Inland packed in sample bags to be shown to the Government's appraisers, wool which was of a better quality than the remaining wool. It undertook to prove this by the testimony of Jack Mack, Joseph Young, Morgan Parke, Gilbert Pedersen and Donald Bagshaw. Appellant contends that these witnesses were not qualified to testify regarding this matter. We think their testimony was properly received.

It was competent. Their qualifications, and the weight to be accorded to their testimony because of their qualifications or asserted lack of qualifications was for, the jury.

■ Neither do we think prejudicial error resulted from the admission of Government's Exhibits 41 and 42. In general these exhibits were compilations of various grades of wool and shrinkages in the wool. They also contained a column of figures purporting to show the loss resulting to the Government. Whatever inferences were to be drawn from these exhibits were already before the jury from other testimony and the exhibits were at most cumulative.

■ Error is predicated on the court's instructions with respect to character testimony.[4] We had occasion to treat a similar instruction fully in Hayes v. United States, 10 Cir., 227 F.2d 540. What was said there is incorporated here. The elements of a proper instruction with reference to testimony by character witnesses are set out in detail, buttressed by citation of authorities. It is, therefore, sufficient to say that a jury should be instructed that good character when considered in connection with other evidence may generate a reasonable doubt, and that the circumstances may be such that an established reputation for good character, if relevant to the issue, would alone create a reasonable doubt, although without it, the other evidence would be convincing. The statement in the instruction that "those

**4.** The court instructed the jury as follows: "There is one further thing I want to add, and that is, I neglected to refer to the fact that the defendants in this case called some character witnesses to the stand. Now those character witnesses didn't testify to anything that happened in the lawsuit, but what they said was they knew what the general reputation of the defendants was in the communities in which they lived and in business and they said that the reputation for truth and veracity and as law-abiding citizens was very good, or words to that effect. Now I will say to you, ladies and gentlemen of the jury, that you are entitled to take into account in this case the testimony of those character witnesses, but you are to take it into account along with the other testimony in the case. You are not to consider the character testimony independently of the rest of the facts and circumstances in evidence in this case. And taking into account all of the evidence, the whole of it, giving no special weight to one part of it as against the other part of it, and taking into consideration these character witnesses, it is for you to decide the issues here of the guilt or innocence of these defendants."

**550**

character witnesses didn't testify to anything that happened in the 'lawsuit" is improper in such an instruction and constituted substantial error.

A final contention is made that the method of the court in conducting the trial, in cross-examining the defendants' witnesses, in interfering with defendants' cross-examination, etc., prevented defendants from having a fair trial. An examination of the record does not sustain this contention. Isolated incidents or remarks by court or counsel which might well have been omitted are present as in most records but they nowise prevented appellants from having a fair trial.

Reversed and remanded for a new trial.