UNITED STATES of America, Plaintiff-Appellee,

v.

Charles Raymond SHERFEY, Defendant-Appellant.

No. 16740.

United States Court of Appeals Sixth Circuit.

Oct. 10, 1967.

Altero J. Alteri, Detroit, Mich. (Feikens, Dice, Sweeney & Sullivan, Detroit, Mich., on the brief), for appellant.

Milton J. Trumbauer, Detroit, Mich. (Lawrence Gubow, U. S. Atty., Milton J. Trumbauer, Jr., Asst. U. S. Atty., Detroit, Mich., on the brief), for appellee.

Before WEICK, Chief Judge, CELEBREZZE, Circuit Judge, and NEESE, District Judge.*

PER CURIAM.

The appellant Sherfey was indicted and found guilty of a conspiracy to violate 18 U.S.C. § 2314[1] and of the substantive offense thereunder of transporting or causing to be transported in interstate commerce securities known to have been stolen. The conspiracy was charged to have commenced in August, 1961 and to have terminated in October, 1961.

The action was tried by the District Judge without a jury. The District Judge found, *inter alia:* " * * * that in August of 1961 [a co-conspirator] Lane met with [a defendant] Colangelo and discussed the possibility of burglarizing a safe located on the eighth floor of the Detroit Building at 2210 Park Avenue in the City of Detroit. Subsequently, several additional meetings were held, with [the appellant] Sherfey and [another defendant] Piazza also present. About a week before the burglary [the appellant] Sherfey contacted [another defendant] Strickland and introduced him to Piazza, who asked him [Strickland] if he would be interested in burglarizing the safe. * * *

"On August 17, 1961, [the defendant] Freeman entered the offices [of the Health Funding Corporation] * * * and removed, among other things, the three stock certificates cited in the indictment. These certificates were given to Piazza and Sherfey and the latter gave them to Strickland. Strickland contact-

---

* C. G. Neese, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. "Whoever transports in interstate * * * commerce any * * * se-

curities * * * of the value of $5,-000 or more, knowing the same to have been stolen * * * [s]hall be fined * * * or imprisoned * * * or both. * * * " 18 U.S.C. § 2314.

ed [another co-conspirator] Dr. Rasak, who offered him $200.00 for the certificates, but Strickland refused to accept this offer and returned the certificates to Sherfey. * * * "

The only substantial evidence in this record supporting some of these findings appears in the testimony of Thomas M. Shaughnessy, a special agent of the Federal Bureau of Investigation. He testified that he interviewed the defendant Strickland on May 28, 1962. He quoted Strickland as having said: " * * * [A]pproximately one week before this burglary, * * * he was contacted by a man * * * called 'Cadillac Jack' Sherfey [who] told him that he would like him [Strickland] to meet Leo Piazza. The next day the three * * * Mr. Sherfey, Mr. Piazza and Mr. Strickland * * * met in a bar * * * [and] had a conversation wherein Leo Piazza told Mr. Strickland that he wished Mr. Strickland to commit a burglary * * *. He told him there was a safe on the eighth floor which should contain approximately $200 in cash and approximately a hundred thousand dollars in stocks. * * * He * * * stated that on August 17, 1961 * * * he telephonically contacted Mr. Sherfey * * * and Mr. Sherfey stated that he had the stocks that had come from this burglary. Mr. Strickland then told me that he contacted Mr. Sherfey on that date and obtained the stocks. * * *

" * * * About a week later Mr. Strickland contacted Dr. Rasak, and Dr. Rasak offered him $200 for the entire amount of stock. * * * Mr. Strickland refused, took back the stocks, and gave them back to Mr. Sherfey. * * * [T]his is Mr. Strickland's statement to me. Mr. Sherfey told Mr. Strickland that he was able to find another individual * * * who could handle the stocks. * * * "

◼ The District Judge limited the above statement adduced by the FBI agent as an admission against the interest of the defendant Strickland, but, without the benefit of the transcript of the testimony in either making his find-

ings or considering the appellant's motion to set such aside, considered the incriminating statements as to the appellant Sherfey in his findings of fact. The agent's statement was not admissible against Sherfey as a statement by an accomplice or a co-conspirator made in furtherance of a criminal transaction. It occurred in 1962, long after the charged criminal conspiracy of 1961 had terminated. It was not admissible as to Sherfey to prove either the conspiracy or the substantive offense. United States v. Dunn, 299 F.2d 548, 554 [3] (6th Cir. 1962), citing Krulewitch v. United States, 336 U.S. 440, 442, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Fiswick v. United States, 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196 (1946); Brown v. United States, 150 U.S. 93, 98–99, 14 S.Ct. 37, 37 L.Ed. 1010 (1893).

◼ We think the Court erred in admitting in evidence letters and documents sent by Averill during his lifetime to the stock transfer agents reporting that his certificates of stock had been stolen. These letters and documents were not made by the transfer agents and were not their business records within the meaning of 28 U.S.C. § 1732. Phillips v. United States, 356 F.2d 297 (9th Cir. 1965); Cromling v. Pittsburgh & Lake Erie R. R., 327 F.2d 142 (3rd Cir. 1963); Carroll v. United States, 326 F.2d 72 (9th Cir. 1963). They would constitute only self serving declarations of the writer and would not be proof of the facts stated therein.

We find no substantial evidence in the record filed with this court to otherwise identify the stock certificates which were received in evidence, or to prove that they were stolen from Averill. Averill did not testify, as he was deceased. The transcript of evidence shows on its face that there are omissions therefrom. We have no knowledge of the pertinency of the omitted evidence.

We are of the opinion that the evidence sufficiently proves that the conspirators caused three of the stock certificates to be transported in interstate commerce. It was stated on the face of each of these

certificates that they were transferable in another state. Piazza gave the certificates to Fabiano with a power of attorney authorizing Lundeberg to sell without limitation as to where the sale could take place. Knowledge that the certificates were required to be transported out of the state for transfer may be imputed to the conspirators. Pereira v. United States, 347 U.S. 1, 9, 74 S.Ct. 358, 98 L.Ed. 435 (1954); Halfen v. United States, 324 F.2d 52, 55 (10th Cir. 1963).

Other questions have been raised which were considered and are deemed to be without merit.

Reversed and remanded for a new trial.